Alfred **LEHTONEN**, Appellant,

v.

Paul **CLARKE**, Appellee.

Nos. A14–88–916–CV, C14–88–1026–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 18, 1990.

W. Stephen Rodgers, Bryan, for appellant.

Jack W. Dillard, Larry A. Catlin, Bryan, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and DRAUGHN, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

TEX.R.CIV.P. 215 (Vernon 1988) authorizes a trial court to levy sanctions on a party who obstructs the discovery process. Among available penalties are orders striking pleadings, dismissal of claims, and such other orders "as are just." The difficulty in this case derives from the relationship between appellate jurisdiction and certain procedural steps taken at the trial level. May a trial court insulate itself from review by imposing sanctions that obstruct the taking of those steps? In our view the answer is no.

It is easier to explain the events below than it is to know what to do about them, for, in the words of Justice Scalia, "The facts of this case are, we must hope, extraordinary." *Michael H. v. Gerald D.,* —— U.S. ——, 109 S.Ct. 2333, 2337, 105 L.Ed.2d 91 (1989). Indeed, they are doubly extraordinary. To say "this case" suggests that we face only a single appeal, when we actually face two: one by ordinary appeal and one by writ of error. Unhappily, they rest on separate procedural foundations and raise different points of error (virtually all of which are well taken), putting us to the task of choosing which cause to reverse and which to dismiss as moot. For reasons explained below, we reverse in the ordinary appeal and dismiss the petition for writ of error.

## I.

The dispute below apparently involved an alleged business venture between the two litigants, the subject of which was an apartment complex. We say apparently, because the record is not entirely clear—an understandable circumstance given that this appeal is from a default judgment. The sanctions complained of grew out of the post-judgment discovery process. A short chronology shows the following:

| | |
|---|---|
| Default judgment signed | July 1, 1988 |
| Interrogatories in aid of judgment sent | Aug. 5 |
| Interrogatories in aid of judgment received | Aug. 9 |
| Bill of Review | Aug. 12 |
| Motion for new trial | Aug. 26 |
| Motion for sanctions (based on failure to answer interrogatories) | Sept. 14 |
| Answers to interrogatories | Sept. 23 |
| Sanctions imposed | Sept. 27 |

One of the critical issues is determining when appellant learned of the default judgment. If, as appellant testified, he first discovered the default judgment upon receipt of the post-judgment interrogatories, then his motion for new trial was timely. *See* TEX.R.CIV.P. 306a(4). But if not, his motion for new trial came too late and he failed to perfect a timely appeal, in which event we lack jurisdiction over this cause.

■ Appellant testified that he never received any notice of the judgment until the interrogatories arrived. Two other members of his business office also denied getting a notice of judgment card. In opposition, appellee's counsel stated *he* received a notice through the mail. There was also testimony from the district clerk's office. The deputy district clerk said she put an unstamped card in the out box, but did not know whether it actually got posted. The trial court nevertheless found appellant had received notice. Such a finding is against the great weight and preponderance of the evidence. That appellee's attorney received a card has no bearing on the question whether appellant got notice. We sustain the fifth point of error. Although this holding ought to suffice in establishing our jurisdiction, it does not do so, because the motion for new trial (even if timely) failed to survive the sanctions process.

As punishment for failure to furnish interrogatory answers, the court ordered appellant's motion for new trial dismissed with prejudice, dismissed not just from con-

sideration—in other words, denied—but also from existence. Appellee's motion for sanctions had requested the court to strike all posttrial papers filed by the other side, and the court did just that. That ruling is the one causing us concern, because the existence of a motion for new trial bears directly upon the appellate timetables. *See* TEX.R.APP.P. 40(a)(1). We turn now to the issue of permissible sanctions under the rules.[1]

## II.

■ Rule 215 is a comprehensive collection of discovery sanctions. It specifies various weapons at the court's disposal for dealing with discovery abuse. Among those weapons are the power to disallow discovery, tax costs, find facts, deny defenses, exclude evidence, and strike pleadings. That last option bears examination. Rule 215(2)(b)(5) authorizes

An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party[.]

This particular paragraph is but one of eight, and the lead segment of rule 215(2)(b) makes clear that the list is not exhaustive, for it expressly empowers the court to "make such orders in regard to the failure as are just." If the lower court's ruling is to be saved, authority for it must be traceable to at least one of the foregoing passages.

In our view that authority does not exist. Plainly, the rule nowhere gives express power to strike a motion for new trial. It might be argued that the power to strike pleadings includes the power to strike a motion for new trial, thus equating a motion with a pleading. One flaw in this reasoning is that the rules of civil procedure treat motions and pleadings differently. *See, e.g.,* TEX.R.CIV.P. 21 (setting forth the requisites of motions); TEX.R.CIV.P. 45 (setting forth the requisites of pleadings); *see also Canadian Overseas Ores, Ltd. v. Compania de Acero del Pacifico,* 727 F.2d 274, 277 (2d Cir.1984) (distinguishing pleadings from motions on the basis of FED.R. CIV.P. 7(a, b), 12(a, b)). Indeed, rule 215 itself recognizes the distinction. In its final part the rule provides that "Motions or responses made under this rule may have exhibits attached including affidavits, discovery pleadings, or any other documents." *Id.* (6). But even apart from the motion-pleading dichotomy, which is not always rigorously observed, it is the *structure* of rule 215(2)(b) that militates in favor of our conclusion.

The eight paragraphs under rule 215(2)(b) betray a deliberate design in their order of appearance. They address the various segments of a lawsuit in an orderly progression from the pretrial to the posttrial stages. Thus the court can disallow further discovery,[2] or tax discovery costs against the offending side.[3] The court can enter summary orders, finding facts in a certain way.[4] Next the rule addresses the trial itself. It authorizes the court to forbid presentation of certain claims or defenses, and to exclude particular evidence.[5] The judge can also take the more severe steps of striking pleadings, staying further proceedings, dismissing the action in whole or in part, or even rendering a default judgment.[6]

At this point there is a pause in the flow of the text, so that the drafters could insert two paragraphs dealing with a special situation, namely physical or mental examina-

---

1. By this time appellant had brought a bill of review, out of an abundance of caution. A bill of review is of course a separate and wholly independent lawsuit. *See* 4 R. MCDONALD, TEXAS CIVIL PRACTICE §§ 18.24–18.30 (1984 rev.). He made the unfortunate mistake of filing under the original cause number, however; needless to say, the court struck it completely from existence for good measure.

2. Rule 215(2)(b)(1).

3. *Id.* (2).

4. *Id.* (3).

5. *Id.* (4).

6. *Id.* (5).

tions.[7] One can be sure of the exceptional character of the insertion by reading rule 215(3), which notably omits these two paragraphs when it provides for the use of "any sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b of this rule."

Paragraph (8) then spells out the final penalty, award of legal fees. This assessment is a quintessential posttrial event. In examining the structure of the rule one sees absolutely no mention of a motion for new trial as such. If such a reference existed, it should appear in the final paragraph. Yet that portion deals only with legal fees. And if one wished to retreat and read paragraph (5) as allowing striking a motion for new trial, that passage's own internal structure would prohibit it. Paragraph (5) flows in a crescendo from striking pleadings to staying proceedings, then to dismissal, and finally to the ultimate penalty of a default judgment. Any authority for striking a motion for new trial should appear *after* the reference to default judgment—the last item—instead of at the start of the rule, where it speaks of striking "pleadings." We conclude that justification for the trial court's action cannot come from rule 215(2)(b)'s eight paragraph list of sanctions.

As a last resort, it is possible to cite the passage which permits a court to "make such orders in regard to the failure as are just." After all, rule 215(2)(b) expressly characterizes the eight paragraph list as nonexclusive. This alternative seems equally unsatisfactory, however. We do not regard striking a motion for new trial as just. For the most outrageous conduct the trial court can impose the most drastic penalty: an adverse judgment plus appropriate legal fees. If the drafters of the rule had intended to allow interference with the appellate process, they would surely have said so in less delphic terms;

but they wrote the rule in precisely the opposite fashion. The final sentence of rule 215(2)(b)(8) reads: "Such an order shall be subject to review on appeal from the final judgment." This, we think, makes matters crystal clear. Given the broad scope of permissible sanctions, availability of appellate review becomes critical. And if there were any lingering doubt, one need only look to rule 215(3), which authorizes imposition of the sanctions listed in rule 215(2)(b)(1–5, 8) with the same proviso: "Such order of sanction shall be subject to review on appeal from the final judgment."

■ Our interpretation of the rule is consistent with existing caselaw, and with the wholescale absence of contrary authority. We know from the line of mandamus decisions beginning with *Jampole v. Touchy*, 673 S.W.2d 569 (Tex.1984) that reviewability of discovery orders is an increasingly important consideration. The supreme court has also found imposition of sanctions an abuse of discretion where the answers to interrogatories were on file at the time of the sanctions hearing. *Lewis v. Illinois Emp. Ins. Co.*, 590 S.W.2d 119 (Tex.1979). Whether *Lewis* remains good law might reasonably be questioned, but as of 1988 Justice Kilgarlin could find no authority for a dismissal or default where the delinquent party had come into compliance before the striking of pleadings. *See* Kilgarlin & Harkness, *Sanctions for Discovery Abuse*, State Bar of Texas Advanced Civil Discovery, at M–8 (1988).[8] Furthermore, we find error in imposing sanctions here because the interrogatories themselves were defective. They purported to require answers "within" thirty days, whereas Tex.R.Civ.P. 168(4) provides that the time allowed *shall not be less than* thirty days. Accordingly, there existed no violation upon which to predicate sanctions

---

**7.** *Id.* (6, 7).

**8.** It is possible to find language supporting the power to impose the harshest of sanctions even in a case where the delinquent party has belatedly filed answers to interrogatories. *See Skinner v. Grimes Iron & Metal,* 766 S.W.2d 550, 551 (Tex.App.—Fort Worth 1989, no writ); *Drozd*

*Corp. v. Capitol Glass & Mirror,* 741 S.W.2d 221, 223 (Tex.App.—Austin 1987, no writ). But in neither opinion was the court's view on that question necessary to the decision, because the record in each case was conceded to be silent as to whether supplementation actually took place.

in the first place. Points of error one through three are sustained.

## III.

■ We have now demonstrated that the appeal is properly here and well-taken, a holding which would normally bring matters to a close. There remains, however, the issue of the writ of error. Under TEX. CIV.PRAC. & REM.CODE § 51.012 we are empowered to hear cases by appeal or writ of error. In construing that law, the supreme court has said, "This statute, by the use of the disjunctive 'or' contemplates that either an appeal or writ of error may be had and not both methods simultaneously." *Salvaggio v. Brazos Cty. Water Cont. & Imp. Dist.,* 598 S.W.2d 227, 230 (Tex.1980). Unfortunately, however, "the case does not give us any direction when both methods have been perfected." *Federal Ins. Co. v. Ticor Title Ins. Co. of Calif.,* 774 S.W.2d 103, 104 (Tex.App.—Beaumont 1989, n.w. h.). We have elected to hear the appeal rather than the writ of error in order to consider the jurisdictional ramifications of the discovery sanctions levied below. The propriety of striking a motion for new trial seems more important to the jurisprudence of the state than the correctness of other, narrow legal rulings challenged only in the writ of error. Those challenges will remain viable upon remand when the trial court holds a fresh hearing on the motion for new trial. As for the annihilation of the bill of review, we have sustained the relevant point of error, and it is for the litigants and the trial court to deal with any mootness consequences of our decision.

Reversed and remanded.