**REMINGTON ARMS COMPANY, INC., Relator,**

v.

**The Honorable Neil CALDWELL, Judge, and the Honorable Benjamin Martinez, Judge, Respondents.**

No. D–2324.

Supreme Court of Texas.

April 7, 1993.

Rehearing Overruled April 14, 1993.

Supplemental Dissenting Opinion of Justice Doggett on Rehearing April 14, 1993.

**168**

William W. Kilgarlin, Austin, Raymond E. (Gene) Green, B. Lee Ware and Deborah

Boden Clinebell, Houston, Russell H. McMains, Corpus Christi, Paul E. Stallings and Don Jackson, Houston, for relator.

Joe K. Longley, Austin, Joe K. Mitchell, Houston, Michael M. Phillips, Angleton, Tim Labadie and Roy Brown, Alvin, Richard P. Colquitt, Houston, for respondents.

## OPINION

CORNYN, Justice.

The opinion of February 10, 1993 is withdrawn and the following is substituted therefor. The issue presented is whether mandamus should issue to direct the trial court[1] to vacate its postverdict order granting death penalty discovery sanctions based on pretrial discovery abuse and trial misconduct. We hold that the trial court abused its discretion and that Relator has no adequate remedy by appeal;[2] thus, we conditionally grant the writ and direct the trial court to vacate its death penalty sanction order.

### I.

David Craig filed the lawsuit out of which this proceeding arises against Debbie James and Remington Arms Company, Inc., for injuries he sustained when he was shot in the right thigh by a bullet fired from a Remington Model 700 rifle. Craig alleged that James negligently handled the firearm and that Remington was guilty of ordinary and gross negligence, as well as strictly liable for the unreasonably dangerous design of the rifle that permitted it to discharge without touching the trigger.

Discovery disputes eventually led to Respondent's imposition of a $25,000 sanction against Remington on February 9, 1989, and the appointment of a special master to hear and make recommendations to the tri-

---

1. Judge Neil Caldwell as the presiding judge of the 23rd Judicial District conducted some pretrial matters in the underlying case. Judge Ben Martinez, however, was assigned to preside over the trial. Judge Martinez is the proper respondent in this mandamus action.

2. "Whenever a trial court imposes sanctions which have the effect of adjudicating a dispute, whether by striking pleadings, dismissing an action or rendering a default judgment, but which do not result in rendition of an appealable judgment, then the eventual remedy by appeal is inadequate." *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913, 919 (Tex.1991).

al court on all pretrial discovery disputes.[3] At trial, Craig presented his case-in-chief for three and one-half weeks and rested. Remington then rested without having presented any evidence. The jury returned a verdict exonerating Remington of all liability for Craig's injuries. Following a hearing on Remington's Motion for Judgment on the Verdict, Respondent declared a mistrial, struck Remington's pleadings, and rendered a default judgment against Remington on issues of liability for negligence and gross negligence. Respondent also prohibited Remington from conducting further discovery, from seeking indemnity, contribution, or any offset based upon the comparative responsibility of any other party or person, and ordered that upon retrial Remington could not introduce mitigating evidence on the issue of punitive damages. We set forth in the margin the court's findings in support of its sanctions order.[4]

3. The court's order warned that "any future abuse of the discovery process" or any failure to comply with an order of the trial court or special master would result in death penalty sanctions.

4. The findings made by the trial court in support of death penalty sanctions were as follows:

(1) Remington made numerous objections in response to Plaintiff's first set of interrogatories and first request for production, many of which were frivolous and without merit;

(2) Remington's objections to Plaintiff's requests for production numbers 3, 4, 11, 12, 13, 14, 15, 16, 17, 19, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 70, 71, 74 and 96 were overruled and Remington was ordered to produce these items by order of Judge Neil Caldwell signed January 31, 1989. The deadline for this production was February 3, 1989;

(3) Remington acted in bad faith and abused the discovery process in violation of Rule 215 by failing to produce documents pursuant to the January 31, 1989 order;

(4) On February 9, 1989, Remington was ordered to pay Plaintiff's counsel Longley & Maxwell $25,000.00 as a monetary sanction for discovery abuses;

(5) On February 9, 1989, Remington was ordered to pay Special Master Bert Huebner's fees as a sanction for discovery abuse and Remington is in violation of such order in that all such fees have not been paid;

(6) In the February 9, 1989 order, Remington was warned that any further abuse of the discovery process by Remington or any failure of Remington to comply with any order of the Court of any request by the Special Master would result in an order striking Remington's pleadings and rendering a default judgment against Remington and the imposition of such other sanctions as the Court may find are justified;

(7) Remington withheld Operations Committee Minutes after stating that it had produced them all;

(8) Remington withheld Operations Committee Minutes after being ordered by the Court, on January 31, 1989 and February 3, 1989, to produce them all;

(9) Remington's counsel B. Lee Ware falsely claimed he had not received notice of the November 28, 1989 discovery hearing;

(10) Remington abused the discovery process by submitting 6,449 pages in no particular order for *in camera* inspection by the Special Master;

(11) Remington abused the discovery process by failing to produce photographs taken by Remington's counsel at the Craig family ranch where the injury occurred. Judge Caldwell ordered that these photographs be produced on January 31, 1989. Remington stated in its May 22, 1989 supplemental response to discovery that it had produced all of the photographs. Remington later attempted to offer at trial photographs that had not been produced;

(12) Remington abused the discovery process by attempting to use James C. Hutton to testify on matters for which he was never disclosed as an expert witness;

(13) Remington and its attorneys have violated the Court's Order of March 21, 1990, by requesting depositions on written questions from various health care providers on November 26, 1991;

(14) Remington's counsel B. Lee Ware acted in bad faith during the discovery process and has engaged in a callous abuse of the discovery process;

(15) Remington's counsel B. Lee Ware acted in bad faith and displayed improper conduct at trial;

(16) The bad faith conduct of Remington and its counsel in the conduct of the discovery process and the trial of this cause resulted in a denial of a just, fair, equitable and impartial adjudication of the rights of the litigants;

(17) Imposition of lesser sanctions has proved ineffective;

(18) Imposition of sever sanctions was, and is, justified;

(19) Remington's conduct and the conduct of its counsel B. Lee Ware throughout this proceeding in the hindrance of the discovery process justified a presumption that its claims and defenses lack merit;

(20) A direct relationship exists between Remington's offensive conduct and the severe sanctions imposed; and

(21) Remington's conduct throughout this proceeding has been flagrant bad faith and its counsel has engaged in a callous abuse of the

Remington urges three grounds in support of its claim for mandamus relief: that Respondent could not properly sanction Remington for pretrial discovery abuse after the trial had taken place, that the sanctions order cannot be supported by counsel's misconduct at trial, and that the death penalty sanction does not meet the requirements of *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex. 1991).[5] We agree that the Respondent committed each of these errors and conclude that none of the alleged instances of abuse support the death penalty sanctions ordered by the trial court.

## II.

■ Remington contends that no trial court may impose discovery sanctions posttrial for pretrial discovery abuse. We cannot agree. Such a rule would absolutely bar imposition of sanctions for discovery abuse revealed for the first time during or after the trial. We do, however, agree that the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct. *See Olney Savings & Loan Ass'n v. Farmers Market of Odessa, Inc.,* 764 S.W.2d 869, 871 (Tex.App.—El Paso 1989, writ denied); 3 Roy W. McDonald, Texas Civil Practice § 17.9. Here, of the twelve incidents of misconduct cited in the sanc-

tions order, nine concern pretrial conduct of which Craig was aware before trial. We hold that Craig waived any objections to these matters by failing to request a pretrial hearing on the alleged discovery abuse and by requesting a preferential trial setting.[6] *See McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72, 75 (Tex.1989); Rule 3.02(a)(4), Local Rules of Practice of the 23rd Judicial Districts of Texas.

■ On the other hand, if pretrial discovery abuse is not revealed until after the trial has begun, or even after trial, a party cannot be said to have waived a claim for sanctions. Craig argues that one of the incidents supporting death penalty sanctions was Remington's attempt to have one of its experts, who had been called to the stand by Craig, testify on matters for which he had not been disclosed as an expert witness. Craig asserts that, at least in part, the trial court's sanction was justified because Remington attempted to have a designated firearms expert testify on the allegedly unrelated subject of ballistics. Craig's lawyer objected to Remington's failure to disclose this subject of anticipated testimony and the trial court excluded all testimony on ballistics. Unquestionably, the trial court has the power during trial to sanction nondisclosure of information requested during discovery in this manner. Tex.R.Civ.P. 215(5); *See also Al-*

---

discovery process. Therefore, sanctions which preclude presentation of the merits of the case are appropriate in this case pursuant to *Koepp v. Utica Mutual Ins. Co.,* 833 S.W.2d 514 (Tex.1991);

(22) The sanctions imposed are not excessive in light of the abuses committed by Remington and the Court finds that such sanctions are just and appropriate pursuant to the standards set forth in *TransAmerican Natural Gas Corporation v. Powell,* 811 S.W.2d 913 (Tex. 1991).

5. Remington also contends that Judge Martinez' order of assignment as a visiting judge did not authorize him to act further after he granted the mistrial. We disagree. The order of assignment states:

This assignment is for the period ... beginning the 10th day of January, 1990, provided that this assignment shall continue after the specifies period as may be necessary for the assigned Judge to complete trial of any case

begun during the period, and to pass on motions for new trial *and all other matters growing out of cases tried by the Judge here and assigned during this period.* (Emphasis added).

The assignment order clearly authorized Judge Martinez to act on posttrial matters "growing out of" this case. The sanctions order and the default judgment are certainly matters growing out of the trial of this case and within the scope of Judge Martinez' assignment.

6. Craig cites two cases for the proposition that the trial court should be allowed to consider the entirety of the conduct of Remington throughout the litigation process when deciding the posttrial motion for sanctions. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1985); *Medical Protective Co. v. Glanz,* 721 S.W.2d 382 (Tex.App.—Corpus Christi 1986, writ ref'd). However, both of these cases dealt with pretrial sanction orders and thus do not control this case.

*varado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex.1992); *Ramirez v. Volkswagen of Am., Inc.*, 788 S.W.2d 700, 703 (Tex.App.—Corpus Christi 1990, writ denied). The Respondent also had the power to assess other suitable sanctions, singularly or in combination, within limitations. *See Alvarado*, 830 S.W.2d at 915; *Ramirez v. Otis Elevator Co.*, 837 S.W.2d 405, 413 (Tex.App.—Dallas 1992, writ denied).

■ However, because Craig argues that this instance of nondisclosure, in combination with the trial court's other findings, supports the death penalty sanction, we must consider whether such nondisclosure justifies the court's ultimate sanction under *TransAmerican* standards. As we recently reiterated, for a death penalty sanction to be just there must be a direct relationship between the offensive conduct and the sanction imposed, and the sanction imposed must not be excessive. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844 (Tex. 1992). Death penalty sanctions for this single incident of discovery abuse fails to meet the *TransAmerican* standard in several ways.

First, no direct relationship exists between failing to designate the witness as a ballistics expert and the striking of the pleadings. While there are certainly occasions when nondisclosure of anticipated evidence by an expert could cause prejudice to the opposing party, that was not the case here. Because Respondent did not admit the ballistics testimony before the jury, the record reveals no prejudice to Craig as a result of the nondisclosure.

Second, striking Remington's pleadings was plainly excessive, especially after the trial court excluded the undisclosed testimony. The legitimate purposes of discovery sanctions—securing compliance with discovery, deterring abusive discovery practices, and punishing violators—were accomplished by the court's refusal to allow Remington the benefit of the undisclosed ballistics testimony. Exclusion of the ballistics testimony alone enforced our discovery rules requiring full disclosure,

demonstrated that such abuse would not likely be tolerated in the future, and punished Remington by denying it the benefit of the undisclosed testimony. *See Chrysler*, 841 S.W.2d at 849.

Finally, consistent with due process guarantees, death penalty sanctions should be used only when the sanctioned party's conduct "justifies a presumption that its claims or defenses lack merit." *Id.* at 850. This record, as evidenced by the jury's verdict, rebuts rather than supports such an inference.

■ The court also based the sanctions order on the finding that Remington attempted to introduce into evidence an aerial photograph that had not been produced during discovery. Remington's counsel explained in response to objection that he had shown it to opposing counsel and had supplied the name and phone number of the photographer so that plaintiff could order a copy if desired. Apparently satisfied with that explanation, Respondent admitted the photograph into evidence. If Respondent was not satisfied with Remington's explanation, the proper sanction would have been to exclude the photograph from evidence. TEX.R.CIV.P. 215(5) (requiring the exclusion of evidence that was not produced during discovery); *see also First Interstate Bank v. Bland*, 810 S.W.2d 277, 287–88 (Tex.App.—Fort Worth 1991, no writ).

### III.

■ The remaining findings deal with the improper conduct and bad faith of Remington's counsel at trial. Craig alleges that during trial Remington's attorney improperly made sidebar remarks, displayed contempt for the court, made frivolous objections, and communicated with the jury.[7] The sanctions order cannot, however, be supported by findings of trial misconduct, simply because Rule 215 is addressed to pretrial discovery misconduct only. In *American Central Insurance Co. v. Texhoma Stores*, 401 S.W.2d 593 (Tex.1966),

---

7. On February 14, 1990, Remington's attorney showed a large chart page to the jury on which

he had drawn a valentine with the inscription: "Hang in there jury."

this court declared that Texas Rules of Civil Procedure 167 and 170, the predecessor rules to current Rule 215, are applicable to pretrial discovery matters only, not conduct occurring in the course of the trial. *See also Lehtonen v. Clarke,* 784 S.W.2d 945, 947–48 (Tex.App.—Houston [14th Dist.] 1990, writ denied) (forbidding the striking of a motion for new trial as a discovery sanction). The trial conduct supporting the court's sanctions order in this case had nothing to do with discovery, and cannot form the basis for a discovery sanction under the plain language of Texas Rule of Civil Procedure 215.

▇▇▇ The trial court does, however, have comprehensive inherent and statutory power to discipline errant counsel for improper trial conduct in the exercise of its contempt powers. *See Ex parte Pryor,* 800 S.W.2d 511, 512 (Tex.1990); *see also* Tex.Gov't Code § 21.002. Trial counsel are also subject to disciplinary action for improper trial conduct. *See* Tex.Disciplinary R.Prof.Conduct 3.04 (Fairness in Adjudicatory Proceeding), 3.06 (Maintaining Integrity of Jury System) (1992), *reprinted in* Tex.Gov't Code Ann., tit. 2, subtit. G app. (Vernon Supp.1993) (State Bar Rules art. 10 § 9). Indeed, the court itself is obligated to refer a lawyer to appropriate authorities to answer for unprofessional conduct of which the judge is aware. Tex.Code of Judicial Conduct, Canon 3(B)(3). The court may also admonish counsel and instruct the jury to disregard improper comments or arguments by counsel, which occurred here. When Craig's attorney objected to the sidebar comments during the trial,[8] Respondent overruled some of the objections and sustained others. Likewise, the judge gave the jury a lengthy instruction concerning counsel's improper communication with the jury on Valentine's Day but refused to hold Remington's attorney in contempt of court as was urged by Craig's counsel. Respondent, however, was not justified in basing a discovery sanction under Rule 215 on attorney misconduct at the trial.[9]

## IV.

For these reasons, we conditionally grant the writ of mandamus and direct Respondent to vacate that part of his order striking Remington's pleadings, granting a default judgment against Remington on issues of liability for negligence and gross negligence, prohibiting Remington from seeking indemnity, contribution, or any offset based upon the comparative responsibility of any other party or person, and prohibiting Remington from offering mitigating evidence at retrial on the issue of punitive damages. The writ will not issue unless Respondent fails to vacate the sanctions order of March 21, 1990, in accordance with this opinion.

DOGGETT, Justice, dissenting.

Having previously announced a stay of execution,[1] the majority now grants a full judicial pardon for what the trial court found to be a capital offense. Observing first-hand the conduct of the parties in this

---

**8.** Texas Rule of Civil Procedure 269 governs improper conduct of this nature.

**9.** Even if this trial conduct could somehow support the discovery sanction, such sanction should be directed at the attorney, not Remington. In *TransAmerican* we explained that a just sanction "should be visited upon the offender," and that the trial court must attempt to determine whether the offensive conduct is referable to the attorney, or to the party, or both. 811 S.W.2d at 917. "A party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *Id.*

**1.** This proceeding concerns conduct that occurred in 1989, was reflected in a lengthy jury trial in February 1990 and was thereafter the subject of a March 21, 1990 sanctions order. The manufacturer first sought mandamus review of the sanctions order in April 1990, was denied relief in the court of appeals but granted an immediate stay the day it sought mandamus here in June 1990. Not until June 1991 was this matter finally decided by instructing the trial court to reconsider its order. *Remington Arms Co. v. Caldwell,* 820 S.W.2d 762 (Tex.1991, orig. proceeding) (per curiam). After the trial judge reaffirmed the imposition of sanctions, Remington again sought mandamus relief. The court of appeals overruled Remington's request on April 23, 1992. The following day it received another immediate stay from this court, and mandamus relief was conditionally granted in February 1993, three years after the first trial.

case, after multiple hearings, and after reviewing a lengthy report by a special master appointed to hear discovery matters, the trial judge determined that:

● "Remington's conduct throughout this proceeding has been flagrant bad faith and its counsel has engaged in a callous abuse of the discovery process."

● "Remington's counsel B. Lee Ware acted in bad faith during the discovery process and has engaged in a callous abuse of the discovery process."

● "The bad faith conduct of Remington and its counsel in the conduct of the discovery process and the trial of this cause resulted in denial of a just, fair, equitable and impartial adjudication of the rights of the litigants."

● "Remington's conduct and the conduct of its counsel B. Lee Ware throughout this proceeding in the hindrance of the discovery process justified a presumption that its claims and defenses lack merit."

The actions of Remington and its counsel, in the opinion of the trial judge, warranted an order striking Remington's pleadings, granting a default judgment against it, prohibiting it from seeking contribution, indemnity or offset, and barring mitigating evidence on punitive damages. Rather than according deference to this trial judge by upholding the death penalty sanctions imposed, the majority grants Remington a full pardon for its bad faith conduct.

In a similar sanctioning of Chrysler Corporation, a trial judge in Nueces County issued findings chronicling repeated falsehoods to the court, violations of court orders and obstructions and delay of the discovery process, and concluded that:

● "Chrysler's long standing and flagrant discovery conduct in this case can only be described as a wilful failure to comply with its responsibilities of discovery under our state's Rules of Civil Procedure and orders of this court. Such a

callous disregard for its responsibilities therein will not be tolerated by this Court."

● "Chrysler's lengthy and continuous obstruction of Plaintiffs' discovery efforts clearly justifies the presumption ... that Chrysler believes its defenses to Plaintiffs' allegations lack merit."

Again, the majority intervened, overturning the trial court's efforts to curb extreme and offensive discovery abuse. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844 (Tex. 1992, orig. proceeding).[2]

The word "sanction" has two distinct and opposite meanings. A sanction can be a punishment designed to encourage compliance with the law, or it can indicate approval or ratification of conduct.[3] By repeatedly overturning the sanctions imposed by trial judges to punish abuse of the discovery process, the majority has chosen to sanction—or ratify—the underlying bad faith conduct. In disarming trial courts by denying them an effective mechanism to ensure compliance with discovery rules, the majority second-guesses trial judges by retrying sanctions in this court and consequently condones and encourages discovery abuse and delay.

In granting today's pardon, the majority ignores Remington's long history of discovery abuse, and the many procedures followed by the trial court prior to ordering severe sanctions for conduct it found to be callous and in bad faith. The underlying litigation concerns whether a defect in the Remington Model 700 rifle caused injury to David Craig in November 1985 by discharging without the trigger being pulled.[4] Pretrial discovery took place over a fourteen-month period and was at times hotly disputed, requiring the appointment of a special master. Determining that "Remington has acted in bad faith and has abused the discovery process" by failing to produce documents as required by the court's order

---

**2.** I joined Justices Mauzy and Gammage in dissenting in that case; Justice Gonzalez noted his dissent on rehearing. 841 S.W.2d at 853.

**3.** Webster's Third New International Dictionary 2008–009 (1976).

**4.** Similar claims regarding the Model 700 are at issue in the underlying litigation in *Chapa v. Garcia*, 848 S.W.2d 667 (Tex.1992, orig. proceeding), and *Remington v. Canales*, 837 S.W.2d 624 (Tex.1992, orig. proceeding).

and agreement of counsel, the trial court on February 9 ordered Remington to pay $25,000 as a monetary sanction. Remington was further directed, as an "additional sanction," to pay the master's fees and expenses. Mandating compliance with the production order and agreement no later than a date set by the master, the order warned that "any future abuse of the discovery process" or any failure to comply with any order of the trial court or special master would result in the imposition of death penalty sanctions. Following continued alleged discovery abuse, a two-day hearing was held before the special master on Craig's motion to strike Remington's pleadings in May 1989. Both parties presented evidence and examined witnesses as to discovery procedures; no sanctions were, however, imposed at that time.

The case proceeded to trial in February 1990 before a jury, which determined that, although Remington had failed to warn of the rifle's potential for misfiring, such failure did not cause Craig's injuries. Craig requested a new trial and sought further sanctions for Remington's discovery abuses. A hearing was held on both motions; at the court's request, the special master filed a report concerning the conduct of Remington and its counsel during pretrial discovery. That report condemned the conduct of Remington and its counsel for obstructing the discovery process by failing to cooperate, by engaging in delaying tactics and by making a misrepresentation to the special master.

The trial judge granted a new trial. In a separate order on March 21, 1990, he struck Remington's pleadings, rendered a default judgment, prohibited Remington from conducting further discovery and from offering evidence to contest liability, and denied Remington contribution, indemnity or offset based on the comparative responsibility of any other party for the injuries. Although declining to review this sanctions order, we previously directed its reconsideration by the trial court in light of *TransAmerican Natural Gas Corp. v. Powell. Remington Arms Co. v. Caldwell*, 820 S.W.2d 762 (Tex.1991, orig. proceeding) (per curiam).

After a November 29, 1991 hearing, the trial court reaffirmed its previous imposition of sanctions. The order, signed December 7, referenced repeated violations of court orders, including discovery orders, the court's earlier determination of Remington's bad faith and abuse of the discovery process, its previous sanctions and warning, the master's findings and the conduct of Remington's counsel, as well as hearings and filings throughout the pendency of the case. The trial court concluded, under *TransAmerican*, that there was a direct relationship between Remington's offensive conduct and the sanction imposed; that lesser sanctions had proved ineffective and that severe sanctions were justified; that the conduct of Remington and its counsel justified a presumption that its defenses lack merit; and that the bad faith conduct of Remington and its counsel during discovery had resulted in a denial of a fair hearing to the litigants. The trial court's order set forth findings of misconduct by Remington and its counsel, including numerous violations of prior orders as to discovery, several misrepresentations to the court, interjection of frivolous and unmeritorious objections to discovery, and obstruction of the discovery process in the manner in which documents were provided for the special master to review. The trial court found that both Remington and its counsel had acted in bad faith and had abused the discovery process. These are the findings that the majority now effectively overturns.

A well-defined pattern is now in place demonstrating the majority's determination to meddle with those trial courts that possess the fortitude to utilize penalties against those who thwart the objective of the discovery process—the search for truth. I joined the consensus effort in this court in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991, orig. proceeding), recognizing that appellate review is sometimes required when trial courts misuse their potent sanctions powers. Yet because the trial judge who has witnessed first-hand the conduct of the parties is clearly in the best position to

assess the level of bad faith involved as well as the most appropriate means of punishment, reasonable discretion must be accorded, particularly in making factual determinations. Affording no deference, the majority has now clearly converted the broad constraints expressed in *Trans-American* into routine *de novo* review of sanctions.

The majority opinion in *Chrysler* correctly set forth the scope of the inquiry under *TransAmerican:*

> Two factors mark the bounds of the trial court's discretion in order for sanctions to be just: first, a direct relationship between the offensive conduct and the sanction imposed must exist; and second, the sanction imposed must not be excessive. In other words, "the punishment should fit the crime." [*TransAmerican*, 811 S.W.2d at 917.]
>
> A permissible sanction should, therefore, be no more severe than required to satisfy legitimate purposes. This means that a court must consider relatively less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse. *Id.*

841 S.W.2d at 849. In performing this review, there is a tension between according proper deference to the trial court's factual determinations and ensuring that no abuse of discretion has been committed. While free to examine the entire record to ensure compliance with *TransAmerican*, this court should not undertake independent factfinding. We do not examine specific instances of conduct one by one, but look at the proceedings as a whole to determine the propriety of the sanctions imposed. While we stated in *Braden v. Downey*, 811 S.W.2d 922, 928 (Tex.1991, orig. proceeding), that "[t]he judicial system cannot afford immediate review of every discovery sanction," neither can it afford to engage in *de novo* review of every case involving severe sanctions.

This, however, is precisely the approach that the majority has begun regularly to employ. Examining the most minute details of the record in *Chrysler*, quoting remarks from the bench, discussing at length particular discovery disputes—then resolving all facts in Chrysler's favor, five judges in Austin chose to become substitute factfinders. The majority overturned sanctions imposed by a trial judge who made extensive factual findings as to Chrysler's bad faith conduct and who had appropriately examined each of the considerations dictated by *TransAmerican*. These findings were rejected in a single sentence:

> Nor do we find any evidence in the record of flagrant bad faith or counsel's callous disregard for the obligations of discovery.

841 S.W.2d at 850. This method of review violates the long observed restriction on this court's ability in an original proceeding to resolve disputed facts.[5]

For Remington, the majority's approach is slightly different. First, most of the trial court's findings are disregarded on technical grounds. Then the remainder, as in *Chrysler*, are separately analyzed and found not to warrant severe sanctions.

Remington's bad faith abuse of the discovery process, the majority determines, cannot serve as the basis for sanctions because Craig waived his right to complain: "the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct." Majority Opinion at 170. As justification for this new and unprecedented rule, the majority relies on misleading scholarship and materials outside the record. The opinion cites one case and one commentary, neither of which addresses sanctions and both of which are concerned exclusively with the need to obtain a ruling on special

---

5. *Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex. 1992, orig. proceeding); *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex.1991, orig. proceeding); *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990, orig. proceeding). *See also Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992, orig. proceeding) ("With respect to resolution of factual issues ... the reviewing court may not substitute its judgment for that of the trial court.").

exceptions prior to trial.[6] The waiver theory is then buttressed with the declaration that:

> We hold that Craig waived any objections to these matters when he certified to the trial court that his pleadings were in order and that discovery was complete.

*Id.* at 170. Nothing in the record indicates that Craig made any such certification. Unfortunately, the concept that an appellate court's review is strictly limited to the record is once again being ignored by the majority. *See Speer v. Presbyterian Children's Home and Service Agency*, 847 S.W.2d 227 (Tex.1993) (avoiding merits of employment discrimination claim by declaring cause moot based entirely upon alleged post-trial developments for which no record of any kind was offered).

Additionally, today's action improperly amends by judicial opinion an explicit procedural rule. *See Alvarado v. Farah Manufacturing Co.*, 830 S.W.2d 911, 915 (Tex. 1992) ("Nor should we revise [Rule 215] by opinion."). In delineating the type of conduct that can serve as a basis for sanctions, Rule 215 authorizes no restriction on the timing of their imposition. While requiring that punishable conduct occur during pretrial discovery, the rule in no way mandates that the sanctions be levied prior to trial commencement.

Nor is waiver, real or imagined, relevant in determining whether Remington should be punished for its bad faith conduct. Nothing in our procedural rules requires that sanctions be in response to the motion of a party. Under Rule 215.2 and 215.3, "the court [may] impose sanctions *sua sponte*, even if no motion is filed." Report of Texas Supreme Court Task Force on

Sanctions at 21 (1993). How then can the conduct of the victimized party disempower the court from imposing sanctions that it finds so overwhelmingly deserved?

Having handily eliminated most of the trial court's findings, the majority then proceeds to divide and conquer those remaining beginning with the conduct of Remington's counsel at trial. Even if misconduct at trial is beyond the scope of Rule 215, a trial judge should certainly be entitled to consider what occurred at trial in evaluating the extent and effect of pretrial abuse. Two findings addressed to Remington's trial conduct are clearly viewed by the trial court as revealing a failure to comply with pretrial discovery orders.[7] Although the majority recognizes that not all discovery abuse is apparent at the very moment of occurrence, and may, under some circumstances, be revealed only by events during or after the trial, Majority Opinion at 170,[8] it nonetheless painfully retries Remington's trial conduct and finds it wanting under *TransAmerican.*

Upon close study, however, the majority opinion reveals that the issues of bad faith or abuse of the discovery process are irrelevant to whether sanctions may be levied against a party. Rather than focusing on the litany of abuses recorded by the trial judge, the majority instead weighs the ultimate issues of liability in the underlying litigation:

> This record, as evidenced by the jury's verdict [attributing causative liability to Debbie James and not Remington], rebuts rather than supports such an inference [that Remington's claims or defenses lack merit].

---

6. *Olney Sav. & Loan Ass'n v. Farmers Mkt., Inc.*, 764 S.W.2d 869, 871 (Tex.App.—El Paso 1989, writ denied) ("The record exhibiting the lack of evidence of filing of the exceptions and showing an affirmative announcement of 'ready' without requesting a ruling constitutes a waiver of any possible error by Appellant."); 3 Roy W. McDonald, Texas Civil Practice § 17:9 (1992) (section entitled "Special Exceptions").

7. The findings, set out in a footnote in the majority opinion, included the trial court's determination that Remington offered materials at

trial that it had not produced in discovery and had misrepresented to the court had in fact been produced, and that Remington failed to disclose the scope of proposed testimony of a expert witness. Majority Opinion at 169–170 n. 4.

8. The standard for determining which conduct has been waived by announcing ready for trial is left unclear. Is the standard whether one should have known of the discovery abuse or is it actual knowledge?

*Id.* at 171. No matter how egregious Remington's conduct, the majority concludes, ultimate sanctions would be unwarranted. Employing precisely the same tactic in *Chrysler*, the majority noted the fact that a drunk driver was one proximate cause of the accident and concluded that:

> In fact, the record conclusively refutes any such suggestion [that Chrysler's claims or defenses lack merit].

841 S.W.2d at 850 & n. 12.

This approach distorts beyond recognition the statement in *TransAmerican* that "Discovery sanctions cannot be used to adjudicate the merits of a party's claims unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." 811 S.W.2d at 918. Under *TransAmerican*, the sole inquiry is the *conduct* of the sanctioned party during discovery, and whether that conduct is so obstructive to the judicial process that a party should not be entitled to proceed. The fact that a valid defense may or may not exist is not a factor to be considered. Otherwise, a party like Remington or Chrysler, that may only be partially liable for an accident, could never be subjected to severe sanctions no matter how callous the pretrial abuse. It is particularly unfair to vindicate Remington on the basis of a jury verdict that may very well have been directly affected by the discovery abuse and bad faith found by the trial court.

Today's decision has far-reaching effects. In the Texas judiciary, numerous practical considerations discourage imposition of harsh sanctions—it is always easier to say "go work it out," to dissuade counsel from bringing heated discovery battles that are difficult to sort out before the busy trial judge. In the unusual situation where the trial court takes an interest in such a struggle, follows *TransAmerican*, and finally says "Enough!," the majority has now imposed another disincentive. The trial judge who does nothing about discovery abuse or at most offers a slight slap on the wrist need never fear review here. Doing too little to ensure that the search for the truth is meaningful will not justify involvement by this majority. *See Walker v. Packer*, 827 S.W.2d 833 (Tex.1992, orig. proceeding) (making it more difficult to obtain timely review of decisions denying discovery). But if the trial court orders a meaningful sanction, a full *de novo* trial in this court is guaranteed. In overturning sanctions in cases such as this one in which the trial court has found highly egregious conduct, the majority ensures that trial judges will be further discouraged from taking the time and trouble to punish bad faith behavior.

The findings made by the trial court here establish a continued disregard for both its orders and the discovery process sufficient to support a presumption that Remington's defenses lack merit. Lesser sanctions were imposed and were ineffective to curb the abuse. Under these circumstances and having reviewed the entire record, the trial court did not abuse its discretion in imposing severe sanctions. Remington's request for mandamus relief should be denied.

GAMMAGE, J., joins in this dissenting opinion.

### ON MOTION FOR REHEARING
Rehearing overruled.

### SUPPLEMENTAL DISSENTING OPINION ON REHEARING

DOGGETT, Justice, dissenting.

In response to the dissenting opinion, the majority no longer

> hold[s] that Craig waived any objection [to pretrial discovery abuse] when he certified to the trial court that his pleadings were in order and that discovery was complete.

36 Tex.Sup.Ct.J. 547 (Feb. 10, 1993). As I had written, "[n]othing in the record reflects that Craig made any such certification." Dissenting Opinion at 176 (Doggett, J., dissenting). Now the majority has corrected the facts, but not the law.

While rewriting the key sentence containing its holding, the majority leaves unaltered its extraordinary conclusion that an innocent party harmed by conduct found by

a trial judge to be callous and in bad faith has no right whatsoever to sanctions once trial has commenced. Continuing to rely on two irrelevant authorities addressing only the need to obtain a ruling on special exceptions prior to trial,[1] the majority attempts a quick fix:

> We [now] hold that Craig waived any objections to these matters by failing to request a pretrial hearing on the alleged discovery abuse and by requesting a preferential trial setting. *See McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72, 75 (Tex.1989); Rule 3.02(a)(4), Local Rules of Practice of the 23rd Judicial Districts of Texas.

Majority Opinion at 170–171 (footnote omitted). A great deal is accomplished with the revision of this single sweeping sentence. A trial judge's considered finding—that the discovery process was callously and in bad faith obstructed—suddenly vanishes, becoming merely "alleged discovery abuse." Next, the majority mandates a completely new timing requirement in no way imposed by Rule 215 nor ever recognized by any Texas court or commentator. Finally, this sentence deprives a party of substantive rights based on a local rule.

Rule 215 contains no timing requirement for sanctions motions and hearings. As one commentator has concluded, "Motions for sanctions ... may be made at any time during the proceeding." David E. Keltner, Texas Discovery § 12:8 at 12–1 (1992). *McKinney v. National Union Fire Ins. Co.* did not involve the imposition or timing of sanctions. Rather, it held that a party objecting to discovery *did not waive* its objections *by failing to obtain a pretrial hearing.* 772 S.W.2d at 75.[2] Moreover, *McKinney* did not restrict the imposition of

sanctions but encouraged the "judicious use of sanctions against those who would abuse the discovery process." *Id.*

Reliance on a local rule to conclude that Craig waived the impositions of sanctions is particularly troublesome. While local rules in Brazoria County provide for party certification that discovery is complete in requesting a trial setting,[3] something that there is no indication that any party—even Remington—did in this case, the making of such a certification should have no effect on the power of the court to impose sanctions for callous and bad faith abuse of the discovery process. This court has made quite clear that such local rules "may not be inconsistent with" the Texas Rules of Civil Procedure. Tex.R.Civ.P. 3a. Craig could not have forfeited a right to sanctions based on a certification he never made under a local rule that does not and cannot alter the provisions of Rule 215 governing their imposition.

The law written for Remington in this cause can only encourage it and others to obstruct discovery and the search for truth.

GAMMAGE, J., joins in this supplemental dissenting opinion on rehearing.

---

**1.** *Olney Sav. & Loan Ass'n v. Farmers Mkt., Inc.,* 764 S.W.2d 869, 871 (Tex.App.—El Paso 1989, writ denied) ("The record exhibiting the lack of evidence of filing of the exceptions and showing an affirmative announcement of 'ready' without requesting a ruling constitutes a waiver of any possible error by Appellant."); 3 Roy W. McDonald, Texas Civil Practice § 17:9 (1992) (section entitled "Special Exceptions").

**2.** Additionally, this situation is expressly covered by Rule 166b(4), stating that "The failure of

a party to obtain a ruling prior to trial on any objection to discovery or motion for protective order does not waive such objection or motion."

**3.** Rule 3.02(a)(4) of the Local Rules of Practice of the 23rd, 149th, 239th & 300th Judicial Districts of Texas, provides that "Requests for setting will ... contain ... Certification that pleadings are in order, discovery is complete, requesting attorney has no conflicting settings and that settlement has been attempted."