TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-00-00071-CV







Mary Ann Chambers, f/d/b/a Today's Signs, Appellant



v.



State of Texas and City of Denton, Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 96-07787, HONORABLE MARGARET COOPER, JUDGE PRESIDING







 The State of Texas and the City of Denton, Texas ("the State"), sued appellant Mary
Ann Chambers f/d/b/a Today's Signs to recover delinquent sales taxes. Following a nonjury trial,
the trial court rendered judgment that the State recover $96,703.37 in sales tax, penalty, and
interest. At Chambers's request, the court filed findings of fact and conclusions of law. We will
affirm the trial court's judgment.

 Chambers, a sole proprietor, did business making and selling signs under the name
Today's Signs. Today's Signs was in operation until March 1996. In 1994, the comptroller
audited Today's Signs for sales tax compliance from 1990 through 1993 and issued a notice of tax
due. Following the audit, Today's Signs continued to accrue unpaid sales taxes, for which the
comptroller assessed a deficiency. Although the total liability period of Today's Signs extends
from January 1990 through February 1996, the portion of the tax that Chambers contests on appeal
relates only to the period audited by the comptroller.

 In her first issue, Chambers contends that the trial court erred in determining that
she is liable for tax on out-of-state sales. Chambers maintains that a tax on out-of-state sales
unconstitutionally burdens interstate commerce. It is clear that taxing out-of-state sales is
unconstitutional. Bullock v. Lone Star Gas Co., 567 S.W.2d 493, 497 (Tex. 1978); see Tex. Tax
Code Ann. § 151.051(a) (West 1992). The record does not show, however, that the trial court
imposed such a tax. Rather, the judgment can be supported on the ground that Chambers
erroneously collected out-of-state sales tax without showing she was entitled to a refund. We
discuss this ground below.

 A vendor such as Chambers who collects money represented to be a tax from a
customer holds the amount collected in trust for the benefit of the State and is liable to the State
for the full amount collected. Tax Code § 111.016(a) (West Supp. 2001);(1) Fleming Foods of Tex.,
Inc. v. Rylander, 6 S.W.3d 278, 281 (Tex. 1999). If the vendor has erroneously collected taxes
from a customer, the vendor may seek a refund from the comptroller, but only after reimbursing
the customer for all taxes collected. § 111.104(f).(2) Moreover, the customer, as a person from
whom the vendor erroneously collected the tax without reimbursement, can also seek a refund
from the comptroller. § 111.104(a), (b); Fleming Foods, 6 S.W.3d at 280-81. This scheme
applies without doubt to taxes erroneously collected on out-of-state sales and repudiates
Chambers's argument that section 111.016(a) unconstitutionally taxes such sales. Rather, these
sections require a vendor who does not reimburse her customer to remit erroneously collected
taxes to the State, from which the customer may ultimately obtain a refund.

 Chambers testified that during the time subject to the audit, she collected tax on
sales to an out-of-state customer, United States Tobacco Company. The evidence shows that from
March 31, 1990, through the end of December 1993, Chambers collected $20,384.09 in tax on
these sales. This amount forms part of the deficiency the State sued to collect.

 In a suit to collect sales taxes, the comptroller's certificate showing a delinquency
is prima facie proof of the amount of tax due after all lawful credits have been allowed. 
§ 111.013(a) (West 1992). The comptroller's delinquency certificate was admitted in evidence
in this case and showed that Chambers owed the State sales taxes of $96,703.37. The presumption
of validity accorded the comptroller's certificate shifted the burden to Chambers to show by
competent evidence that the assessment was illegal and excessive. Smith v. State, 418 S.W.2d
893, 896 (Tex. Civ. App.--Austin 1967, no writ).

 Chambers argues that she proved as a matter of law that she refunded the out-of-state sales tax to U.S. Tobacco. She contends that during the audit of Today's Signs, the auditor
found that she had fully reimbursed U.S. Tobacco and that he credited the amount of out-of-state
sales tax against the remainder of tax due. The trial court found that Chambers had received credit
for all offsets to which she was entitled. To resolve Chambers's matter-of-law contention, we first
examine the evidence supporting the court's finding, ignoring any contrary evidence. If no
evidence supports the finding, we then examine the entire record to see if the contrary proposition
is established as a matter of law. Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982).

 Mary Hawkins, an auditor for the comptroller, testified for the State. Although
Hawkins did not audit Chambers's business herself, she had reviewed the documents prepared by
the person who performed the audit, Robert Palla. Hawkins described a document titled
"Adjustments to Taxable Sales - Credits" that Palla had prepared for Chambers during the audit. 
In this document, Palla itemized Chambers's out-of-state sales to U.S. Tobacco and calculated
$20,384.09 as the total sales tax that Chambers had billed and collected. A footnote relating to
each sale states, "Items shipped to US Tobacco OOS [out-of-state] locations. The tax was refunded
to the customer." Near the bottom of the document, in a section called "Comments," Palla wrote,
"This exam is to give credit for tax collected in error." The document is dated April 8, 1994.(3)

 Hawkins testified that the audit package prepared by Palla contained all the
adjustments made in the audit and that the document itemizing sales to U.S. Tobacco was not part
of the audit. It was instead prepared on the date of the exit conference with Chambers and
appeared to be information showing her how the audit could be amended if she refunded the
erroneously collected tax. In a report Palla submitted as part of the audit documents, Palla noted
that he had informed Chambers that credit would be allowed in the audit only after he could verify
that the taxes paid in error had been refunded to the customer. The audit package indicated to
Hawkins that Chambers had presented no documentation to show Palla that she had in fact
refunded the money to U.S. Tobacco.

 Chambers testified that Palla gave her the document itemizing sales to U.S.
Tobacco. Palla told her that she needed to refund $20,384.09 to the customer and that once she
refunded the money, she would receive a credit from the comptroller. After the audit, Chambers
issued U.S. Tobacco a credit of $20,384.09 to use against future sales. Chambers stated that U.S.
Tobacco drew down the credit over the course of the following year. An invoice of Today's Signs
showing a credit to U.S. Tobacco of $20,384.09, without identifying the reason for the credit, was
admitted in evidence and is dated October 5, 1994. This date follows by a significant time April
8, 1994, the date of Palla's document. Chambers testified that once the audit was completed, she
never requested a rehearing of the audit or of any returns that she had filed.

 Hawkins's and Chambers's testimony provides evidence that Chambers failed to
show during the audit that she had made reimbursement and failed to ask the comptroller for a
redetermination of the audit afterward. Therefore, despite some evidence that she reimbursed
U.S. Tobacco after the audit, Chambers did not prove as a matter of law that she documented the
reimbursement with the comptroller so as to be entitled to credit for the out-of-state tax. We
accordingly overrule issue one.

 In her second issue, Chambers claims the trial court erroneously allowed the State
to ambush her at trial with evidence that was inconsistent with information it provided in
discovery. Chambers argues that the court erred by overruling her motion to strike the State's
evidence. In two interrogatories submitted before trial, Chambers asked the State to identify each
period it contended she incorrectly reported taxes and to identify each payment she made during
the liability period. The document the State provided supplies this information. Chambers
complains because the total tax due that she extrapolated from the document differs significantly
from the amount Hawkins testified to at trial. Chambers's extrapolation, however, does not
account for overdue amounts the auditor found during the audit in addition to the amounts
Chambers incorrectly reported in each tax period. That Chambers interpreted the document in an
unwarranted manner does not entitle her to relief on appeal.

 Assuming that the State's document was unresponsive, however, the failure to
obtain a pretrial ruling on a discovery dispute that exists before trial waives any claim for
sanctions based on that conduct. Remington Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex.
1993). Because Chambers failed to move to compel a responsive answer before trial, the trial
court properly overruled her motion to strike. We overrule issue two.

 We affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Patterson

Affirmed

Filed: February 28, 2001

Do Not Publish

1. Although the prior version of section 111.016 governs this case, the 1995 amendment
is irrelevant here and we cite the current version for convenience.
2. Although the prior version of section 111.104 controls, the 1999 amendment is
irrelevant to this cause.
3. Although Chambers characterizes Palla's statements in the document as an admission,
the testimony contradicting the effect of the statements negates their use as an admission. 
Marshall v. Vise, 767 S.W.2d 699, 700 (Tex. 1989).


20,384.09 as the total sales tax that Chambers had billed and collected. A footnote relating to
each sale states, "Items shipped to US Tobacco OOS [out-of-state] locations. The tax was refunded
to the customer." Near the bottom of the document, in a section called "Comments," Palla wrote,
"This exam is to give credit for tax collected in error." The document is dated April 8, 1994.(3)

 Hawkins testified that the audit package prepared by Palla contained all the
adjustments made in the audit and that the document itemizing sales to U.S. Tobacco was not part
of the audit. It was instead prepared on the date of the exit conference with Chambers and
appeared to be information showing her how the audit could be amended if she refunded the
erroneously collected tax. In a report Palla submitted as part of the audit documents, Palla noted
that he had informed Chambers that credit would be allowed in the audit only after he could verify
that the taxes paid in error had been refunded to the customer. The audit package indicated to
Hawkins that Chambers had presented no documentation to show Palla that she had in fact
refunded the money to U.S. Tobacco.

 Chambers testified that Palla gave her the document itemizing sales to U.S.
Tobacco. Palla told her that she needed to refund $20,384.09 to the customer and that once she
refunded the money, she would receive a credit from the comptroller. After the audit, Chambers
issued U.S. Tobacco a credit of $20,384.09 to use against future sales. Chambers stated that U.S.
Tobacco drew down the credit over the course of the following year. An invoice of Today's Signs
showing a credit to U.S. Tobacco of $20,384.09, without identifying the reason for the credit, was
admitted in evidence and is dated October 5, 1994. This date follows by a significant time April
8, 1994, the date of Palla's document. Chambers testified that once the audit was completed, she
never requested a rehearing of the audit or of any returns that she had filed.

 Hawkins's and Chambers's testimony provides evidence that Chambers failed to
show during the audit that she had made reimbursement and failed to ask the comptroller for a
redetermination of the audit afterward. Therefore, despite some evidence that she reimbursed
U.S. Tobacco after the audit, Chambers did not prove as a matter of law that she documented the
reimbursement with the comptroller so as to be entitled to credit for the out-of-state tax. We
accordingly overrule issue one.

 In her second issue, Chambers claims the trial court erroneously allowed the State
to ambush her at trial with evidence that was inconsistent with information it provided in
discovery. Chambers argues that the court erred by overruling her motion to strike the State's
evidence. In two interrogatories submitted before trial, Chambers asked the State to identify each
period it contended she incorrectly reported taxes and to identify each payment she made during
the liability period. The document the State provided supplies this information. Chambers
complains because the total tax due that she extrapolated from the document differs significantly
from the amount Hawkins testified to at trial. Chambers's extrapolation, however, does not
account for overdue amounts the auditor found during the audit in addition to the amounts
Chambers incorrectly reported in each tax period. That Chambers interpreted the document in an
unwarranted manner does not entitle her to relief on appeal.