STATE DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Relator,

v.

**Hon. Donald R. ROSS, Respondent.**

**No. 12–86–0089–CV.**

Court of Appeals of Texas, Tyler.

May 22, 1986.

William Luther Martin, Jr., Asst. Atty. Gen., Dallas, for relator.

John Cash Smith, Mehaffy, Weber, Keith & Gonsoulin, Orange, Barbara Barron, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Richard A. Peebles, Reid, Strickland, Gillette & Elkins, Baytown, for respondent.

PER CURIAM.

This is an original proceeding in which Relator ("State") seeks issuance of a writ of mandamus directing Respondent to rescind certain discovery-related orders.

In the underlying cause of action, suit was filed against the State by John Robert Peterson and Leslie Ann Peterson ("Petersons"). The lawsuit arose out of an automobile collision occurring on August 22, 1982, in which the Petersons' six-year-old son was killed and Mr. Peterson was in-

jured. At the time of the accident, Mr. Peterson was driving his father's truck and pulling his father's boat. An oncoming vehicle, driven by Terri Lee Robinson Winnon ("Winnon"), swerved first to the right edge of the highway and then over to the left hand side of the road, striking the Peterson truck. The Petersons sued the State to recover for damages suffered as a result of the death of their son and injuries to Mr. Peterson and for property damage to the truck, boat and trailer, alleging that an unsafe drop-off on the side of the highway caused Winnon to lose control of her car and swerve into the oncoming lane of traffic.

The case was initially tried beginning on March 25, 1985. The trial lasted until April 4, 1985, when a mistrial was declared due to a hung jury. On June 11, 1985, a new trial was set for April 22, 1986. In response to the State's motion for leave to file petition for writ of mandamus, we stayed the April trial until further order of this court.

Prior to the first trial, the Petersons served the State with interrogatories seeking identification of fact witnesses and experts expected to testify and with requests for production of photographs and various documents relating to the accident and lawsuit. Discovery was cut off by order of the trial court on March 14, 1985, ten days before the first trial.[1]

The present controversy arose when the State tried to supplement its answers to interrogatories and requests for production after the mistrial. A rather complicated exchange of motions and responses occurred before the second trial. For ease of reference, we have compiled the following chronology:

| | | |
|---|---|---|
| 2/28/86 | 1. | State's Third Supplemental Answers to Interrogatories and Requests for Production listing additional fact and expert witnesses and accident reports [2] |
| | 2. | State's Interrogatories to Petersons requesting update on Mr. Peterson's medical treatment and inquiring about other claims and suits arising out of the accident, along with any settlement reached in those actions |
| 3/13/86 | | Petersons' Second Supplemental Answers to Interrogatories and Requests for Production, adding name of one possible witness |
| 3/14/86 | | Petersons' Motion to Strike Additional Fact Witnesses Listed in State's Third Supplemental Answers to Interrogatories [3] |
| 3/19/86 | | Petersons' Motion to Strike expert witnesses in State's Third Supplemental Answers to Interrogatories |
| 3/21/86 | | State's Fourth Supplemental Answers to Interrogatories and Requests for Production, listing expert witnesses expected to testify and providing opponents with copies of numerous documents relating to expected expert testimony [4] |

1. The order of the court reads:

    COMES NOW before this Court Plaintiffs' motion to have a discovery cut-off date and also a deadline for objecting to deposition testimony and responding thereto, and the Court after considering the same is of the opinion that such motion should be granted. It is, therefore,

    ORDERED, ADJUDGED and DECREED that on the 14th day of March, 1985, all discovery in the above-entitled and numbered cause shall cease.

    Further, it is ORDERED that on the 28th day of February, 1985, all objections to deposition testimony shall be filed with the Court and on the 6th day of March, 1985, all responses to objections to written depositions shall be filed.

    SIGNED this 28th day of February, 1985.
    /s/ DONALD R. ROSS, Judge Presiding

2. Most of the facts witnesses identified in both the third and fourth supplemental answers were

involved in or investigated accidents which occurred on the same section of highway as the subject crash; the accident reports related to those accidents.

3. The Petersons urged that it was "physically impossible" for them to depose the 13 additional fact witnesses before the second trial and that the knowledge of those witnesses concerning other accidents on the highway would be irrelevant to the case at hand.

4. Items listed include:
    (1) A paper produced by the Transportation Research Board and a videotape prepared by the Texas Transportation Institute on the relationship between pavement edges and vehicle stability;
    (2) Photographs of core samples taken from subject highway;

| | | |
|---|---|---|
| 3/25/86 | 1. | Petersons' Motion to Permit Filing of Motion to Strike All Documents and All Discovery Produced after March 14, 1985, and Motion to Quash and Motion to Strike Interrogatories |
| | 2. | Petersons' Motion to Strike All Documents and All Discovery Produced after March 14, 1985. |
| | 3. | Petersons' Motion to Strike State's Third and Fourth Supplemental Answers to Interrogatories and Requests for Production |
| | 4. | Petersons' Motion to Strike Interrogatories, served in March of 1986 |
| | 5. | Petersons' Motion to Quash, depositions to be taken of 20 people noticed on March 20, 1986 |
| 3/28/86 | | State's Motion to Preserve Discovery Rights and for Sanctions |
| 3/31/86 | | Hearing on Discovery Motions |

After the hearing, the trial court issued a plethora of orders precluding further discovery in this case. Summarizing these various orders, the trial court:

(1) Granted Petersons' Motion to Strike All Documents and All Discovery Produced After March 14, 1985, including photographs, videotapes, computer simulations, manuals, and scientific papers set out in State's Fourth Supplemental Answers, described above;

(2) Struck all but three witnesses listed in State's Third and Fourth Supplemental Answers;

(3) Struck Interrogatories served on Petersons by State after March 14, 1985;

(4) Quashed State's notice of depositions to be taken of Mr. Peterson's treating physicians, Dr. Copell and Dr. George.

The basis of the trial court's orders is that the discovery cut-off date of March 14, 1985, was still in effect.

In its petition for writ of mandamus, the State asserts that Respondent clearly abused his discretion in forbidding supplementation of answers to interrogatories and requests for production. The State argues that Respondent's orders are in conflict with Tex.R.Civ.P. 166b(5) which, it contends, creates an absolute duty to supplement requests for discovery up to thirty (30) days before trial.[6] The State also at-

(3) Photographs of Winnon's vehicle;
(4) Photographs of a 1976 Pontiac Sunbird used as a test vehicle by Dr. Ivey and Dr. Buth, both designated as expert witnesses. Dr. Buth and Dean Sicking, also identified in the supplement as a testifying expert, did a computer simulation of the accident which the State hoped to present on retrial.
(5) Manuals on highway safety; and
(6) Papers prepared by the Texas Transportation Institute on highway maintenance which might be referred to in experts' testimony.

5. The main point of all motions filed on this day is that the discovery deadline set before the first trial was still in effect since the State did not move for an extension of that deadline. Also, the Petersons' claim that the revelation of many additional fact and expert witnesses and the production of voluminous and complex documentary evidence so close to retrial prejudices them and constitutes unfair surprise.

6. Rule 166b(5) reads:
5. Duty to Supplement. A party who has responded to a request for discovery that was correct and complete when made is under no duty to supplement his response to include information thereafter acquired, except the following shall be supplemented not less than thirty days prior to the beginning of trial unless the court finds that a good cause exists for permitting or requiring later supplementation.

a. A party is under a duty seasonably to supplement his response if he obtains information upon the basis of which:

(1) he knows that the response was incorrect or incomplete when made;

(2) he knows that the response though correct and complete when made is no longer true and complete and the circumstances are such that failure to amend the answer is in substance misleading; or

b. If the party expects to call an expert witness when the identity or the subject matter of such expert witness' testimony has not been previously disclosed in response to an appropriate inquiry directly addressed to these matters, such response must be supplemented to include the name, address and telephone number of the expert witness and the substance of the testimony concerning which the expert witness is expected to testify, as soon as is practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court.

c. In addition, a duty to supplement answers may be imposed by order of the court

tacks Respondent's order precluding further discovery by State, through interrogatories to Petersons, of an apparent settlement between Winnon's insurance carrier and Mr. Peterson's father for property damage to the truck. The State also attacks Respondent's refusal to allow Winnon to be joined as a third-party defendant in the Peterson lawsuit.

■ We will first consider matters related to the State's attempt to join Winnon as a third-party defendant. The State refers to a motion for leave to join Terri Winnon, filed on December 31, 1984; we find no copy of that motion in the record. The State claims a hearing was held to consider the motion on January 4, 1985. No transcription of such a hearing on that date appears in the record, but we assume from comments made in a statement of facts from a hearing on January 8, 1985, that the proceeding was postponed until that date. The State complains that Respondent failed to rule on its motion, leaving it with no ruling from which to appeal; however, Respondent clearly stated at the close of the hearing, "[t]he court will overrule the motion by the State for consideration and will deny leave to join the Winnons as third-party defendants in the action that is pending before the court in cause number 83–89 [the Peterson suit]." We have no written order to that effect in the record, but neither is there any indication that Respondent refused to sign such an order. We therefore decline to order Respondent to take further action on that motion.

The State also filed a "Motion for Leave to File Third-Party Action by Consolidation of Existing Cross-Action in Separate Suit" and a "Request to Reconsider Motion for Consolidation." Winnon had filed suit against the State in a separate action in the trial court arising out of the accident, and the State filed a cross-action for contribution and indemnity. Winnon's case against the State ended in a nonsuit. The State has tried to consolidate its cross-action

against Winnon with the present action, but by orders dated April 9, 1986, the trial court refused to consolidate the two cases. In its petition for writ of mandamus, the State claims the settlement between Winnon's carrier and Peterson's father would give rise to "an article 2212a release" of the damages attributable to Winnon if she is not joined.

■ The State asks that this court order Respondent to grant its motion to consolidate. The record before us indicates that Respondent considered State's motions regarding consolidation on March 31, 1986, and denied them because Winnon's attorney was not properly notified of the hearing. We find no abuse of discretion in this action and will not order Respondent to rescind his orders in that regard. State's claim that Respondent, by striking interrogatories, erroneously refused discovery of the details of the settlement between Winnon's carrier and Peterson's father will be considered with the other discovery matters raised.

The principal purpose of State's action in this court is to enforce its right to supplement answers to interrogatories and requests for production and its right to serve interrogatories upon the opposing parties. Since the first trial, the State has obviously worked to strengthen its defense to the Petersons' claim. Apparently, most of the State's efforts have been to garner evidence that discontinuity of the highway edge was not a proximate cause of the accident. The State maintains that the most damaging aspect of Respondent's action is that a computer simulated accident reconstruction recently prepared by "recognized scholars at Texas A & M University" would not be allowed at trial.

In response, Respondent attacks the issuance of a writ on several grounds, those with some merit being: (1) the State has an adequate remedy on appeal, and (2) Respondent's orders do not reflect a clear abuse of discretion.

or agreement of the parties, or at any time prior to trial through new requests for supple-

mentation of prior answers.

■ Initially, it must be determined whether this proceeding is the proper vehicle for review of the trial court's discovery orders. We see no need to "reinvent the wheel" by analyzing the increasing use of mandamus to correct erroneous pre-trial discovery orders, as much has already been written on that subject.[7] As Respondent points out, the Supreme Court still seems to recognize that a prerequisite to mandamus is that Relator have no adequate remedy on appeal. *See Jampole*, 673 S.W.2d at 573. Other courts of appeals have held that an adequate remedy on appeal exists if error can be rectified by reversal and new trial. *See Lone Star Life Ins. Co. v. Street*, 703 S.W.2d 426, 429 (Tex.App.—Fort Worth 1986, no writ); *Superior Trans-Med, Inc. v. Hall*, 683 S.W.2d at 498. However, the Supreme Court has made it clear that the possibility of reversal and retrial does not necessarily constitute an adequate remedy:

> Moreover, requiring a party to try his lawsuit, debilitated by the denial of proper discovery, only to have that lawsuit rendered a certain nullity on appeal, falls well short of a remedy by appeal that is 'equally convenient, beneficial, and effective as mandamus.' *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 439 (1959); *Way & Way v. Coca Cola Bottling Co.*, 119 Tex. 419, 29 S.W.2d 1067, 1071 (1930); *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063, 1068 (1926).

*Jampole*, 673 S.W.2d at 576.

■ We note Respondent's well-reasoned argument that the *Jampole* case can be distinguished from the present action. The relator in *Jampole* was prevented from eliciting evidence from the defendant and, consequently, could not make a bill of exceptions; without a bill, it was unlikely that he would be able to show harm on appeal. In this case, at least as to the information contained in State's supplemental answers, the State could make a bill of exceptions on which to appeal; in fact, Respondent was clear at the pre-trial hearing that he would not prevent State's making of a bill. However, even if State were eventually able to present the excluded evidence to the appellate court and successfully show error, the next step would be to remand the case to the trial court for new trial. The reasoning in *Jampole* cited above would still support the use of this proceeding to correct a clear abuse of discretion in discovery matters. Accordingly, we feel justified in using our writ power to correct any clear abuse we may find in the trial court's refusal to allow the State to supplement answers to interrogatories and requests for production.

As to Respondent's striking of interrogatories served on the Petersons after March 14, 1985, and quashing State's notice of depositions to be taken of Mr. Peterson's physicians, mandamus would be appropriate to rectify possible abuse. A writ may issue where the trial court's order improperly restricts the scope of discovery defined by the Rules of Civil Procedure. *Lindsey v. O'Neill*, 689 S.W.2d 400, 401 (Tex.1985); *Velasco v. Haberman*, 700 S.W.2d 729, 730 (Tex.App.—San Antonio 1985, no writ). Having found this proceeding to be a proper forum for our review, we consider the State's argument that Respondent clearly abused his discretion in barring further discovery after March 14, 1985.

Neither case law, procedural rules nor common sense seem to support Respondent's position that the order closing discovery before the first trial remained in effect after a mistrial was declared. Rule 166(g), cited by Respondent, does authorize the trial court to make an order "which recites the action taken at the pre-trial conference, the amendments allowed to the pleadings, the time within which same may be filed, and the agreements made by the parties as to any of the matters considered,

---

7. *See, e.g.,* Judge Barrow's dissent in *Jampole v. Touchy*, 673 S.W.2d 569, 576 (Tex.1984); *Superior Trans-Med, Inc. v. Hall*, 683 S.W.2d 496 (Tex.App.—Dallas 1984, no writ); *Zenith Radio Corp. v. Clark*, 665 S.W.2d 804 (Tex.App.—Austin 1983, no writ); Gavin, "The Expanding Use of Mandamus to Review Texas District Court Discovery Orders: An Immediate Appeal is Available," 32 Sw.L.J. 1283 (1979).

and which limits the issues for trial to those not disposed of by admissions or agreements of counsel...." An order made pursuant to Rule 166 "shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice." Respondent contends that Rule 166 sustained the life of the discovery cut-off order after mistrial because State took no affirmative action to modify it. Respondent cites *Meeker v. Meyer*, 391 S.W.2d 787 (Tex.Civ.App.—Beaumont 1965, writ ref'd n.r.e.), as authority for its stance that modification of a Rule 166 pre-trial order may be made only in response to an affirmative action by the party seeking modification.

■ The order in question, however, does not fall within the ambit of Rule 166. In *Meeker*, the parties agreed at pre-trial conference to limit the issues at trial, and the trial court was not allowed to modify the order reflecting that agreement without a written or oral instruction at trial. The order now before us was not made as the result of admissions by, or an agreement between, the parties. According to *Mason v. Tobin*, 408 S.W.2d 243, 245 (Tex. Civ.App.—Houston 1966, no writ), "There is nothing in the rule authorizing the trial court to determine the merits of the issues raised by the pleadings at a pre-trial hearing, where the parties do not agree to limit the issues, and the issues raised by the pleadings are not disposed of by admissions." Consequently, the continued existence of the cut-off order could not depend on Rule 166.

The rule was established long ago that after a new trial was granted in a cause, it " 'stands upon the docket as if it had not been tried.' " *De Ramirez v. Sovereign Camp, W.O.W.*, 123 S.W.2d 737, 738 (Tex. Civ.App.—El Paso 1938, no writ) *citing Smith v. Thornton*, 119 Tex. 344, 29 S.W.2d 314, 315 (Tex.Comm'n App.1930, *judgmt adopted* ). Logically then, any pre-trial order relating to that trial would also be obliterated. At the time the cut-off

order became effective, the first trial was only ten days away; if anything, Respondent actually extended discovery time beyond the limits of the rule. The need for that particular order was eliminated when a mistrial was declared and a new trial was ordered.

■ We do not agree that a party has an absolute right to supplement answers to interrogatories and requests for production up to thirty days before trial.[8] Certainly, Respondent has authority to enter new pre-trial discovery orders, including protective orders, before the second trial. However, the effect of the orders signed by Respondent on March 31, 1986, was to *retroactively* prohibit discovery already conducted by the parties, particularly the State, over the course of the year following the mistrial. The only basis given for these orders was a cut-off order no longer in effect.

The court in *Jampole*, 673 S.W.2d at 573, noted that, "the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed." By denying the State—and for that matter, the Petersons—an opportunity to develop their case without valid orders, the purpose of discovery was thwarted. Such action constitutes a clear abuse of discretion.

We are certain Respondent will rescind his orders dated March 31, 1986, to allow discovery to proceed in accordance with the Rules of Civil Procedure and this opinion. Only if he should fail to do so will mandamus issue.

---

8. *See, e.g.,* Tex.R.Civ.P. 166b(5)(c). Furthermore, according to subsection 2(e)(3) of Rule 166b, a party may be required to designate experts expected to testify "within a reasonable and specific time before the date of trial." *See Werner v. Miller,* 579 S.W.2d 455 (Tex.1979).