**CITY OF DALLAS, Appellant,**

v.

**Helen ORMSBY, Surviving Spouse of James Oren Ormsby; James C. Ormsby and Vernon Lee Ormsby, Surviving Sons of James Oren Ormsby; Pamela Ormsby Grossman and Sharon Ormsby Stanford, Surviving Daughters of James Oren Ormsby; and Augusta Belle Ormsby, Surviving Mother of James Oren Ormsby, Appellees.**

**No. 07–94–0102–CV.**

Court of Appeals of Texas,
Amarillo.

April 28, 1995.

Order Overruling Motion for
Rehearing June 23, 1995.

Office of City Atty., John Kirby, Asst. City Atty., Dallas, for appellant.

Wright and Associates, Michael Kelly, Grand Prairie, for appellees.

Before REYNOLDS, C.J., and BOYD and QUINN, JJ.

BOYD, Justice.

In seven points of error, the City of Dallas (the City) asserts the trial court erred in awarding appellees (the Ormsbys) attorney's fees as a sanction for failing to comply with discovery requests. For reasons stated below, we affirm the judgment of the trial court.

The suit underlying the sanctions award arose from an automobile accident which occurred on a road owned and maintained by the City. Included in the theories upon which the Ormsbys sought recovery was the theory that a defect in the condition of the roadway, *i.e.*, a roadway edge dropoff, caused the accident which resulted in the death of James Oren Ormsby. In preparation for

trial, the attorneys representing the Ormsbys submitted several discovery requests to the City including Requests for Admissions, Interrogatories and Requests for Production. Relevant to this appeal are Interrogatory 14, seeking a list of maintenance documents concerning the section of roadway in question, and Request for Production 14 seeking:

> All maintenance schedules, repair records, resurfacing records, reports of roadway danger or damage, replacement records and all other documents in your possession, concerning the roadway or bridge where the events that are the subject of this lawsuit, occurred.

Included in its response to the above request, the City produced a memorandum dated February 13, 1989 from Charles G. Griffith, Assistant Director for Street Operations, to John E. Kirby, Assistant City Attorney. The body of this memorandum stated that a search of maintenance records disclosed that no repair work had been done on the subject roadway in the 90 days following the accident. The memorandum also designated Coy Evans as the City's expert witness. Below the signature line were the following handwritten notations:

> CGG
>
> Inspections @ 8300 Camp Wisdom
>
> 85–86 Under Construction (culvert . . .[1]
>
> Oct 87  D  No Hazards
>
> Aug 88  D  No Hazards
>
> UB 1–30– . . .

Although the City contends these notations are self-explanatory, additional background concerning the City's inspection program is necessary to an understanding of this case and the issue presented here.

In support of its efforts to maintain its streets, the City conducts an inspection program which includes a superficial annual inspection of all of the streets in the City. This inspection is conducted by having a driver and another employee drive over each street observing the general condition of the street and noting any hazards. In pursuance of this program, the City assigned each block of each street a rating from A to E, with E indicating an "unacceptable" condition. The

City also maintained a User's Manual for its inspection program that explained the information to be collected and the coding scheme for reporting that information. The field notes created during these inspections were transferred to a computer system operated by the City. The City does not retain the field notes after the information is entered into the computer system.

On April 24, 1991, over a year after their original discovery requests, the Ormsbys took the deposition of Coy Evans, the City's expert. In the course of that deposition, the Ormsbys' attorney asked about the inspection of Camp Wisdom Road and was directed to the February 13, 1989 memorandum. When the Ormsbys' counsel noted the memorandum referred to the 8300 block of Camp Wisdom Road rather than the 8600 block, where the accident was believed to have occurred, he asked "[o]ther than this notation on the memorandum, do you know where the inspection records are with regard to the inspection of Camp Wisdom?" In his response, Evans did not identify or refer to the underlying computer records maintained by the City. Instead, he merely noted that the 8600 block would have been inspected the same day. The existence of the underlying records was developed during the cross-examination of Evans during the first trial of this cause.

The first trial in this case began September 9, 1991 and resulted in a verdict for the City. Following the trial, the Ormsbys moved for a new trial on the basis that the City had withheld the underlying document, thereby gaining an unfair advantage at trial and asserting that justice would be served by the granting of a new trial. The trial court granted the motion on January 28, 1992, and awarded the Ormsbys $18,432.50 in attorney's fees as a sanction for discovery abuse. At the second trial, the jury again found for the City and the trial court rendered judgment in its favor. The City now appeals the discovery sanction award of the $18,432.50 in attorney's fees.

The discovery process is governed by Rules 166b through 169 of the Texas Rules of

---

1. The right edge of the memorandum is not readable in the copies that are in the record.

Civil Procedure. Sanctions for the abuse of the discovery process is governed by Rule 215. Rule 167 permits a party to request the production of any designated documents constituting or containing matters relevant to the action. On the motion of a party, a trial court may impose sanctions, including an award of attorney's fees, Tex.R.Civ.P. 215(2)(b)(8), for the failure to respond to a request for production, Tex.R.Civ.P. 215(1)(b)(3)(c)–(d). Under the rule, an evasive or incomplete answer shall be treated as a failure to answer. Tex.R.Civ.P. 215(1)(c).

In reviewing a trial court's imposition of discovery sanctions, it is well settled that we are to apply an abuse of discretion standard. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986). Under that standard, a trial court abuses its discretion only when it acts without reference to any guiding rules or principles or its act is arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). In our review, we are cautioned to bear in mind that the mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

We also note that there is a limitation upon a party's right to seek sanctions for discovery abuse. As delineated and explicated by the Texas Supreme Court in *Remington Arms Co., Inc. v. Caldwell,* 850 S.W.2d 167 (Tex.1993), the failure to obtain a pretrial ruling upon discovery disputes that exist before the commencement of trial constitutes a waiver of any claim for sanctions based upon that conduct. *Id.* at 170.

In the City's first three points, which have been grouped together for argument, it contends the trial court abused its discretion in imposing discovery sanctions because (1) the City did not withhold requested information, (2) the Ormsbys committed "bad faith" by falsely representing they were unaware of the information, and (3) the material in ques-

tion was only marginally relevant to the case and the Ormsbys fully developed the material at trial.

In support of its points, the City argues it fully complied with the Ormsbys' discovery request and that their complaint is merely one of form. That is to say, the City argues that it supplied the information as a handwritten note on the memorandum rather than as a computer printout. The City contends its decision to do so was based upon the inconvenience of securing a computer printout.[2] We must reject those arguments.

The City's first contention wherein it asserts that it "did not withhold information during discovery," begs the determinative question. The Ormsbys' request was a request for production under Rule 167, not to be confused with other types of discovery requests. In their requests, the Ormsbys sought several categories of "reports" and "documents" concerning the road in question. Their request was not merely one for information. Additionally, Rule 167(1)(f) provides:

A party who produces documents for inspection shall produce them as they are kept in the usual course of business, or shall organize and label them to correspond with the categories in the request.

This rule is of particular significance in situations where, as here, the information is maintained in a "coded" form. There was nothing on the memorandum to suggest the significance of the letter "D." In their examination of the handwritten notation, the trial court could have reasonably determined the Ormsbys could have rationally concluded that the condition recorded was "no hazards." The fact that the City maintained a user's manual for the inspection program that defined the meaning of the conditions A through E is an indication that the meaning of the condition codes was not self evident.

The fact that the request was for production under Rule 167, and was not simply an interrogatory seeking information, dictated that the City produce the report itself rather

---

**2.** According to the City, the computer records were maintained in storage at another city department and were not readily available.

than simply a piece of information from the report. To hold otherwise would be to permit any party, upon whom a discovery request was made, to negate the differentiation made by the rules by unilaterally transforming a request for production into an interrogatory or other form of discovery request.

Additionally, the fact that the report did not exist in a tangible or printed out form at the time the request was made is of no significance. Rule 167 addresses itself to "documents or tangible things...." Tex. R.Civ.P. 167(1)(a). Although the wording of Rule 166b(2)(b), the general rule governing the scope of discovery, might otherwise imply that the word "documents" is limited to tangible documents, the parenthetical language following the word makes it clear that such is not the case.[3]

■ Concerning the City's other arguments, if the City wanted to avoid the production of the document on the basis of the difficulty of obtaining a paper copy or for the reason that the request, in whole or in portion, was irrelevant, it was obligated to make its objection on those grounds at the time of its response. The failure to do so waived any objections it may otherwise have asserted. Tex.R.Civ.P. 166b(4).

■ The City next contends the Ormsbys misrepresented to the court that no documents were furnished showing a road condition of "D." The Ormsbys' motion for sanctions stated that "no documents were furnished that reflected the roadway was inspected and given a 'D Condition' rating." It is debatable whether the presence of the letter "D" without any explanation of its meaning renders the statement in the motion false. However, the motion also stated more generally that the City failed to supply documents reflecting the "D" rating. This record is not sufficient to establish bad faith on the part of the Ormsbys of such a manner as to invalidate the trial court action.

As the City stated the documents requested in the Ormsbys' Request for Production 14 were attached to its response when in fact they were not, the trial court could have reasonably concluded the City had given an evasive or incomplete answer in response to the Ormsbys' discovery request. Such a conclusion would have justified the trial court's imposition of Rule 215 sanctions. The City's first three points are overruled.

■ In its fourth point of error, the City challenges the trial court's granting of the Ormsbys' motion for new trial rather than the imposition of sanctions. However, the granting of a new trial within the trial court's period of plenary power is not subject to review either by a direct appeal from that order or from a final judgment rendered after further proceedings in the trial court. *Cummins v. Paisan Construction Co.,* 682 S.W.2d 235, 236 (Tex.1984); *Gee v. Lewisville Memorial Hospital, Inc.,* 849 S.W.2d 458, 461 (Tex.App.—Fort Worth 1993, writ denied). The City's fourth point is overruled.

■ In its fifth and sixth points, the City argues that by failing to object to its failure to produce the report or seek a ruling before trial, the Ormsbys waived any complaint based upon the City's conduct. As support for that claim, the City places primary reliance upon the holding in *Remington Arms Co. v. Caldwell,* 850 S.W.2d at 170, that by a failure to seek pretrial rulings from the trial court, a party waives any right to seek sanctions "in connection with those matters of which they knew, or should have known, prior to the commencement of the first trial."

However, nothing in the *Remington* opinion can be read to apply to a situation where the failure to properly comply with discovery was not discovered prior to the commencement of the trial. Here, it was the Ormsbys' contention that nothing in the City's response was sufficient to give them any type of reasonable notice that the City had not complied with the production request and,

---

3. The relevant language from Rule 166b is:
   A party may obtain discovery of the existence ..., and contents of any and all documents, (including papers, books, accounts, drawings, graphs, charts, photographs, electronic or videotape recordings, and any other data compila-

tions from which information can be obtained and translated, if necessary, by the person from whom production is sought, into reasonably usable form) and any other tangible things....

further, that they did not discover the City's non-compliance until the first trial had commenced. Under this record, we cannot say the trial court abused its discretion in its evident acceptance of that contention. The City's fifth and sixth points are overruled.

In its seventh and final point, the City contends the trial court erred in its imposition of sanctions because "the city was also entitled to judgment upon the completely independent ground that [a]ppellees did not give proper notice of [their] claim." In support of that proposition, the City points to the undisputed facts that the Ormsbys gave no notice to the City of their claim and, in addition, that the jury found the City had no actual notice of the Ormsbys' claim. Because a governmental unit is entitled to notice of a claim, Tex.Civ.Prac. & Rem.Code Ann. § 101.101 (Vernon 1986), the City reasons that its affirmative defense of lack of notice entitled it to judgment and defeats the trial court's right to impose sanctions.

■■■ An examination of Rule 215, however, reveals no indication that the imposition of sanctions for abuse of the discovery process is tied to success on the merits of the underlying litigation. Indeed, the absence of such a relationship between success on the merits and sanctions for discovery abuse is essential to insure compliance with the discovery rules. To hold otherwise would permit unchecked discovery abuse by the prevailing party, even though its success might result through such an abuse of discovery. The City's seventh point is overruled.

In final summary, all the City's points are overruled and the judgment of the trial court affirmed.

## ON MOTION FOR REHEARING

### June 23, 1995

In its motion for rehearing, the City advances eight points of error. After reviewing appellant's motion, we find that only its seventh point, corresponding to its seventh point on original submission, merits additional discussion. In that point, the City contends that in our original opinion we failed to address its contention that it was entitled to a take-nothing judgment based on its lack of notice of the Ormsbys' claim. Because of that lack of notice, the City says, it was entitled to a take-nothing judgment which, as a matter of law, barred the Ormsbys' recovery, thereby making the grant of a new trial and the sanction of attorney's fees occasioned by the new trial irrelevant.

In considering the City's claim, it is necessary to briefly review some of the post-trial history of the case. At the first trial of this cause, in addition to questions concerning the City's negligence, a question was submitted to the jury asking whether the City had actual notice of the "incident involving James Oren Ormsby," to which the jury answered no. It is this answer upon which the City bases its argument. In its judgment, and reciting only that "the verdict of the jury was for the Defendant and against the Plaintiff," the trial court found for the City.

After the Ormsbys moved for a new trial on the basis of discovery abuse, the City filed a response in which it argued that it had properly responded to the discovery request, that the Ormsbys' had not shown entitlement to a new trial and any complaint concerning discovery had been waived. The response did not address the City's claim that the action was barred for lack of notice. The trial court granted the Ormsbys' motion for new trial on January 28, 1992. On August 16, 1993, over eighteen months later, and days before the second trial was to start, the City filed a motion to set aside the order granting a new trial. It is in this motion that the City raised the argument that the Ormsbys' action was barred for lack of notice. As support for this position, the City relied on the jury finding in the first trial.

■■■ It should be apparent from this factual recitation why the trial court acted properly in denying the City's August 16, 1993 motion and why the City's seventh point must fail. Stated simply, the effect of the trial court's granting of the Ormsbys' motion for new trial on January 28, 1992, was to wipe clean the factfinding slate. *Schaffer v. Speckels*, 62 S.W.2d 85 (Tex.Comm.App.1933) (holding that granting of a new trial requires treating the action as though no trial had been had); *State Dept. of Hwys. & Pub.*

*Transp. v. Ross,* 718 S.W.2d 5, 11 (Tex. App.—Tyler 1986, no writ); *see also* 5 McDonald Texas Civil Practice § 28:42[b] (1992). The jury finding upon which the City's argument is predicated had ceased to exist and could no longer form the basis of a judgment in its favor. Moreover, at the time the City made its motion to set aside the grant of a new trial, the trial court's plenary power over the original judgment had long since expired, and the court was without authority to set aside its order granting a new trial. *Porter v. Vick,* 888 S.W.2d 789, 789–90 (Tex.1994); *Fulton v. Finch,* 162 Tex. 351, 346 S.W.2d 823, 826 (Tex.1961). For these reasons, the City's seventh point is unavailing and is overruled. Finding nothing in the City's remaining points of error raising new arguments or causing doubt as to the propriety of our original disposition, we overrule appellant's motion for rehearing.