COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 02-05-188-CV

THE PROFITLIVE PARTNERSHIP 

AND PROFITLIVE, INC. APPELLANTS

V.

CHERYL M. SURBER AND 

JOHNSON PROPERTY 

INVESTMENTS, INC. APPELLEES

------------

FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellants The Profitlive Partnership and Profitlive, Inc. (collectively, Profitlive) appeal the trial court’s summary judgment for appellees Cheryl M. Surber and Johnson Property Investments, Inc. (JPI) on appellees’ common law fraud and conspiracy claims.  We reverse and remand.

Profitlive operated Creative Real Estate Workships (CREW) in the Dallas-Fort Worth area.  In May 2001, after listening to a radio broadcast, attending several CREW workshops, and meeting with Profitlive’s president, Dan Franklin, Surber invested $100,000 on behalf of JPI in exchange for a 10% ownership interest in Profitlive.  Four months later, Profitlive was no longer operating, and appellees had realized only a dismal return on their investment.  In December 2001, appellees sued Profitlive, alleging claims for common law fraud and conspiracy.

During the discovery period, appellees served requests for admissions on Profitlive.  Profitlive did not respond to the requests for admissions; consequently, pursuant to procedural rule 198.2(c), the requests were deemed admitted by Profitlive.
(footnote: 1)  Thereafter, appellees filed a motion for summary judgment supported primarily by the deemed admissions and Surber’s affidavit.  Profitlive did not respond to the motion or appear at the summary judgment hearing.  The trial court granted appellees’ motion and rendered a summary judgment awarding them nearly $700,000 in actual and exemplary damages and interest.

In its first issue, Profitlive complains that the summary judgment for appellees is improper because it is based on the affidavit of Surber, an interested party, and Profitlive’s deemed admissions that should have been stricken based on principles of equity.  Profitlive also argues that the summary judgment evidence does not satisfy appellees’ burden of proof.

The function of summary judgment is not to deprive a litigant of his right to trial by jury but to eliminate patently unmeritorious claims and untenable defenses.
(footnote: 2)  Thus, a
 plaintiff is entitled to summary judgment on a cause of action only if she conclusively proves all essential elements of her claim as a matter of law.
(footnote: 3)  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
(footnote: 4)  
When the movant’s summary judgment proof fails to conclusively establish each element of her cause of action, t
he trial court may not grant summary judgment by default simply because the nonmovant did not respond to the summary judgment motion
.
(footnote: 5)
 To be entitled to summary judgment, appellees were required to establish each element of their causes of action as a matter of law.
  
The elements of common law fraud are (1) a material representation, (2) that is false, (3) which was either known to be false when made or was made recklessly without knowledge of its truth, (4) with the intent that the representation be relied upon, (5) that it was relied upon, and (6) which caused injury.
(footnote: 6)  The elements of civil conspiracy are: 
(1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result.
(footnote: 7)
 In this case, the summary judgment awards appellees actual damages of $229,448.25; however, the summary judgment evidence does not conclusively establish that appellees suffered damages in this amount as a result of Profitlive’s conduct.  Profitlive’s deemed admissions, on which appellees rely, establish that appellees were induced by Profitlive’s false, material misrepresentations to invest $100,000 in Profitlive and that the only return appellees received on this investment was $1,000.  This evidence is controverted, however, by
 Surber’s own affidavit, which avers that appellees were damaged in the “approximate” amount of $229,448.25
 and that the return appellees received on their investment was $1,100.  
Specifically, Surber’s affidavit avers as follows:

As a result of the misrepresentations made by [Profitlive], and as a result of the conspiracy [of] Franklin and [Profitlive’s partners, officers, and directors, appellees] have actually been damaged in the 
approximate
 amount of $229,448.25 plus interest . . . .  These actual damages are based on my original investment of $100,000.00 . . . plus interest . . . .  I have spent approximately 2500 hours during the course of this litigation investigating and pursuing this case, time which, if not for [Profitlive’s] actions, I would have spent doing consulting or other employment activities  utilizing my M.B.A.  I am only seeking damages for 1500 hours of my time . . . at a consulting rate of $50/hour, which is reasonable given my education and experience. . . .  The total amount of [appellees’] damages is 
approximately
 $229,448.25 plus interest . . . .  [Emphasis supplied.]
(footnote: 8) 

Thus, appellees’ own summary judgment evidence raises a material issue of fact regarding the amount of their damages.  Because appellees have failed to conclusively establish that they are entitled to summary judgment on all essential elements of their causes of action, the judgment must be reversed.
(footnote: 9)
 Upon reversal of a summary judgment, our ordinary disposition is to remand for a new trial.  The effect of a new trial is that all proceedings in the trial court are set aside and the cause is reinstated on the docket as though it had never been tried.
(footnote: 10) 

Rule 44.1(b) of the Texas Rules of Appellate Procedure provides in part that this court “may not order a separate trial solely on unliquidated damages if liability issues are contested.”
(footnote: 11)  We conclude that the restriction of Rule 44.1(b) applies in this case because the damages are unliquidated; therefore, we reverse the entire summary judgment and remand the case for a new trial on both liability and damages.  Because this disposition comports with Profitlive’s prayer
(footnote: 12) and affords Profitlive the greatest relief we can grant them  on appeal
, it is not necessary to address Profitlive’s arguments challenging the competency of Surber’s affidavit, the propriety of the deemed admissions, or the trial court’s award of punitive damages.

We sustain Profitlive’s first issue,
(footnote: 13) reverse the trial court’s summary judgment for appellees, and remand the cause to the trial court for a new trial.

JOHN CAYCE

CHIEF JUSTICE

PANEL A:  CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

WALKER, J., filed a concurring and dissenting opinion.

DELIVERED:  August 16, 2007

FOOTNOTES
1:
See
 
Tex. R. Civ. P.
 198.2(a) (providing that a party must respond to requests for admissions within thirty days); 
Tex. R. Civ. P.
 198.2(c) (“If a response is not timely served, the request is considered admitted without the necessity of a court order.”).

2:
Gulbenkian v. Penn,
 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

3:
See 
Tex. R. Civ. P.
 166a(a), (c); 
MMP, Ltd. v. Jones
, 710 S.W.2d 59, 60 (Tex. 1986); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

4:
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason,
 143 S.W.3d 794, 798 (Tex. 2004).

5:
Rhone-Poulenc, Inc. v. Steel,
 
997 S.W.2d 217, 222-23 (Tex. 1999)
; 
City of Houston
, 589 S.W.2d at 678
.

6:
Johnson & Johnson Med., Inc. v. Sanchez,
 924 S.W.2d 925, 929-30 (Tex. 1996); 
Malone v. Sewell,
 168 S.W.3d 243, 252 (Tex. App.—Fort Worth 2005, pet. denied).

7:
Tri v. J.T.T.,
 
162 S.W.3d 552, 556 (Tex. 2005)
.

8:
Indeed, appellees’ original $100,000 investment less the $1,000 return that they received from Profitlive, plus Surber’s damages for 1,500 hours of her time at $50 per hour, equals only $174,000.  The remainder of the damages amount that appellees claim is prejudgment interest and $3,000 for “expenses.” 

9:
See MMP, Ltd.,
 710 S.W.2d at 60 (holding that summary judgment is improper where the summary judgment evidence does not conclusively establish all essential elements of the plaintiff’s cause of action); 
see also CEBI Metal Sanayi Ve Ticaret A.S. v. Garcia,
 
108 S.W.3d 464, 466 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that summary judgment based on deemed admissions was improper where the admissions contradicted each other, thereby creating fact issues).

10:
State Dep’t of Hwys. & Pub. Transp. v. Ross
, 718 S.W.2d 5, 11 (Tex. App.—Tyler 1986, no writ)
; 
see Hudson v. Wakefield
, 711 S.W.2d 628, 630-31 (Tex. 1986) (holdng that when a summary judgment is reversed and remanded for trial, litigants are not restricted to the issues raised in the summary judgment proceeding). 

11:
Tex. R. App. P. 
44.1(b); 
cf. 
Tex. R. Civ. P. 320 
(providing that no new trial on unliquidated damages alone shall be ordered if liability is contested).

12:
In its prayer, Profitlive states the following: “For the foregoing reasons, Profitlive Defendants respectfully request that this Court reverse the trial court’s order granting summary judgment to Plaintiffs and awarding Plaintiffs exemplary damages, and grant such other relief as may be necessary.”

13:
See
 
Tex. R. App. P.
 47.1.