Affirmed in Part, Reversed and Remanded in Part and Memorandum Opinion
filed June 13, 2006









Affirmed in Part, Reversed and Remanded in Part and Memorandum Opinion filed June 13, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00694-CV

____________

 

SAID KHEIR A/K/A
BENNY KHEIR, INDIVIDUALLY, C & S SPORTS and IMPORTS, AND REMINGTON
INTERNATIONAL,
Appellants

 

V.

 

PROGRESSIVE COUNTY
MUTUAL INSURANCE COMPANY AS SUBROGEE OF JOSE ANTONIO VALDES, Appellee

 



 

On Appeal from the County
Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 716,728

 



 

M E M O R A N D U M   O P I N I O N

In fourteen issues, appellants Said Kheir,
C & S Sports and Imports, and Remington International challenge a final
judgment incorporating both partial summary judgment rulings and a jury=s findings against
appellants.  We affirm in part, reverse
in part, and remand.

Factual Background

Sometime in early 1998, Said Kheir
purchased a 1998 Mercedes SLK 230 on behalf of Remington International, a d/b/a
or business of Kheir=s father-in-law, Leon Elmas.[1]  Kheir then entered into an agreement with
Richard Steffan to sell the Mercedes on consignment.  Kheir had bought and sold cars with Steffan
on previous occasions.

On February 7, 1998, Steffan sold the
Mercedes to Jose Antonio Valdes.  Valdes
paid the purchase price of $49,678.51 by check[2]
and took possession of the car, but never received a title to the car.  Instead, Kheir received the title in the name
of Remington International.  Kheir then
transferred the title to C & S Sports and Imports, which was a d/b/a or
business of Elmas and Kheir=s wife, Cayanne
Elmas.[3]  At one point, Kheir gave the title to another
person as security for a business venture. 


In April of 1999, Kheir repossessed the
Mercedes from Valdes=s residence and sold it.  Neither the car nor the purchase price was
ever returned to Valdes. 








Valdes and his wife filed suit against
appellants, Steffan, and others, alleging claims including breach of contract,
negligent representation, fraud, conspiracy, conversion, and wrongful
repossession, and seeking, among other things, declaratory relief and specific
performance.  Valdes also made a claim
with his automobile insurance company, Progressive County Mutual Insurance
Company, for the loss of the Mercedes. 
Progressive paid Valdes his loss, and then filed an intervention to
recover those payments and other damages as subrogee to the claims of Valdes
and his wife.  Valdes and his wife filed
a ANotice of Partial
Dismissal of Claims Without Prejudice,@ dismissing their
claims against the defendants, except those claims asserted by
Progressive.  Progressive=s claims mirrored
those of Valdes and his wife, with the addition of a claim that the defendants
violated various provisions of the Deceptive Trade Practices-Consumer
Protection Act (DTPA).  

Progressive later served appellants with
requests for admissions that were not timely answered.  Appellants later filed a motion to strike the
deemed admissions, which the trial court denied.  Based on the deemed admissions, Progressive
filed a motion for partial summary judgment, which the court granted in
Progressive=s favor on its claims for breach of
contract, conversion, wrongful repossession and declaratory judgment against
Kheir, individually and d/b/a C & S Sports and Imports and d/b/a Remington
International.

In February of 2004, the case proceeded to
a jury trial on the remaining claims against Kheir, Cayanne Elmas, C & S
Sports and Imports, and Remington International.  The jury found that these defendants had
violated the DTPA and that their actions were unconscionable and were performed
knowingly or intentionally.  On these
findings, the jury awarded $10,000 against each defendant.  The jury also found that Kheir committed
fraud, and that C & S Sports and Imports and Remington International acted
with malice.[4]  The jury awarded exemplary damages of $25,000
each against Kheir, C & S Sports and Imports, and Remington
International.  Finally, the jury awarded
attorney=s fees of
$30,000.  








The final judgment, signed March 23, 2004,
reflected the jury=s findings.  Additionally, the trial court incorporated
its rulings from the partial summary judgment and awarded Progressive actual
damages of $45,180.27 against Kheir, Cayanne Elmas, C & S Sports and
Imports, and Remington International, jointly and severally.  The final judgment also reflected that the
defendants were jointly and severally liable for court costs and pre- and
post-judgment interest on the actual damages and attorney=s fees at the rate
of 10% per annum.  Lastly, the final
judgment recited that A[a]ll other relief not expressly granted
is denied.@  

The defendants moved for a new trial and
for judgment notwithstanding the verdict, but the motion was overruled by
operation of law.  Kheir, C & S
Sports and Imports, and Remington International filed a notice of appeal;
Cayanne Elmas was not included in the notice. 
Appellants did not file a supersedeas bond to prevent the execution of
the underlying judgment, and eventually the court clerk issued an abstract of
judgment.

On September 8, 2004, three months after
appellants filed their notice of appeal, the trial court held a status
conference, which only Progressive=s counsel
attended.  At that time, the trial court
signed an AOrder of Dismissal@ ordering that the
Aabove entitled and
numbered cause of action@ was dismissed for want of
prosecution.  Stamped below the trial
court=s signature was
the following language:  AThis is a Final
Judgment disposing of ALL issues and ALL parties, and ALL prior Interlocutory
Orders of the Court in this cause are hereby made final.@

Appellants= Issues

On appeal, appellant presents fourteen
issues addressed in the following categories: 
(1) the September 8, 2004 order of dismissal dismissed the entire case;
(2) the trial court erred in denying appellants= motion to strike
deemed admissions; (3) the trial court erred in excluding evidence bearing on
attorney=s fees; (4) the
trial court erred in denying appellants= motion for
directed verdict based on Progressive=s failure to
answer discovery; (5) the trial court erred in rendering judgment against
Cayanne Elmas; (6) the evidence was legally and factually insufficient to
support the award of punitive damages; (7) the trial court erred in stacking
punitive damages awards; and (8) the trial court erred in awarding pre- and
post-judgment interest at a rate of ten percent.[5]  We address each in turn.








1.       The
September 8, 2004 Order of Dismissal.

In this issue, appellants contend the
trial court=s March 23, 2004 AFinal Judgment@ was merely
interlocutory because it did not dispose of all claims and all parties, and the
trial court=s AOrder of Dismissal@ for want of
prosecution, signed September 8, 2004, was the only final judgment.  Consequently, the September 8 order dismissed
the entire cause of action, including all of appellee=s claims and its
March 23 judgment.  We disagree with
appellants= interpretation of these orders.

First, appellants contend the March 23
final judgment is interlocutory because, for example, it does not dispose of
Valdes and Gonzalez=s claims (except as those claims are
asserted by Progressive).  Second,
appellants contend, the plain language of the September 8 order demonstrates it
is Aunequivocally@ the only final
judgment in the case, because it provides that Athe above entitled
and numbered cause of action@ is dismissed for
want of prosecution, and further provides that AThis is a Final
Judgment disposing of ALL issues and ALL parties, and ALL prior Interlocutory
Orders of the Court in this cause are hereby made final.@  Appellants posit that any other
interpretation of this order creates problems in determining when the appellate
timetable commences for matters like post-judgment motions and notices of
appeal.

The problem with appellants= first contentionCthat the March 23
order does not dispose of all claims and all partiesCis that it confuses
summary judgment practice with a judgment after a trial on the merits.  In Lehmann v. Har-Con Corp., a summary
judgment case, the Texas Supreme Court held that 

in cases in which
only one final and appealable judgment can be rendered, a judgment issued
without a conventional trial is final for purposes of appeal if and only if
either it actually disposes of all claims and parties then before the court,
regardless of its language, or it states with unmistakable clarity that it is a
final judgment as to all claims and all parties. 








39 S.W.3d 191, 192B93 (Tex. 2001)
(emphasis added).  The Court went on to
hold that the inclusion of a AMother Hubbard@ clause in a
judgment rendered without a conventional trial does not indicate that it is
final for purposes of appeal.  Id.
at 203B04.  But, as the emphasized language above
demonstrates, the requirement that a final judgment must actually dispose of
all claims and parties regardless of its language does not apply to a judgment
rendered after a trial on the merits such as the trial of the parties= claims conducted
here. 

At least twice since Lehmann, the
Supreme Court reaffirmed that a judgment rendered after a conventional trial on
the merits is presumed to dispose of all issues and parties.  See Moritz v. Preiss, 121 S.W.3d 715, 718B19 (Tex. 2003);
John v. Marshall Health Servs., Inc., 58 S.W.3d 738, 740 (Tex. 2001).  In Moritz v. Preiss, the Court
recognized once again the presumption of finality for judgments that follow a
trial on the merits, a presumption it had spoken to almost forty years earlier:

When a judgment, not intrinsically interlocutory in
character, is rendered and entered in a case regularly set for a conventional
trial on the merits, no order for a separate trial of issues having been
entered pursuant to [our procedural rules,] it will be presumed for appeal
purposes that the Court intended to, and did, dispose of all parties legally
before it and of all issues made by the pleadings between such parties.








121 S.W.3d at 718B19 (citing N.E.
Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897 (Tex.1966)).  It takes a significant act by the judge and
the parties to overcome this presumption. 
See Lehmann, 39 S.W.3d at 203 (stating that finality must be
resolved by a determination of the intention of the court as gathered from the
language of the decree and the record as a whole, aided on occasion by the
conduct of the parties); cf. Moritz, 121 S.W.3d at 719 (judgment
in favor of defendant health care providers was final, even though one provider
was not named in the judgment, when plaintiff did not request and court did not
enter any orders for a separate trial against the provider, the provider=s liability was
not submitted to the jury, and the plaintiff did not object to the jury
charge); John, 58 S.W.3d at 740 (presumption would be applied even
though judgment did not mention three settling defendants, when plaintiff did
not move for separate trials and did not seek any relief against settling defendants
at trial, and there was nothing to indicate that trial court did not intend
judgment to finally dispose of entire case).

We find the presumption appropriate for
this case.  Appellants have not
identified any parties who were still in the case but did not participate in
the trial,[6]
nor have they pointed to any issues left dangling.  The only basis appellants give us for
presuming that the judgment was not final is the entry of the September 8 order
of dismissal.  On the facts of this case,
the September 8 dismissal order cannot overcome the presumption and turn what
appears to be a final judgment into an interlocutory judgment.  The dismissal order appears to be a
precautionary measure, a belt-and-suspenders action to ensure without any
question that the case was finished. 
This one act, taken without explanation by the trial court, is insufficient
to overcome the presumption.[7]

We overrule appellant=s issue.

2.       The
Denial of Appellants= Motion to Strike
Deemed Admissions.

In this issue, appellants contend the
trial court abused its discretion by failing to grant appellants= motion to strike
deemed admissions.  Appellants do not
deny their responses to Progressive=s requests for
admissions were untimely answered, but assert they demonstrated good cause
because Kheir needed to travel to Lebanon to attend to a relative=s illness and
medical treatment at the time when the responses were due.   








When a party does not return answers to
requests for admissions within thirty days, the matters in the requests are
deemed admitted against that party without the necessity of a court order.  See Tex.
R. Civ. P. 198.2(c); Darr v. Altman, 20 S.W.3d 802, 807B08 (Tex. App.CHouston [14th
Dist.] 2000, no pet.) (citing earlier version of rule).  A trial court has broad discretion to permit
or deny the withdrawal of deemed admissions. 
Stelly v. Papania, 927 S.W.2d 620, 622 (Tex. 1996).  An appellate court should set aside the trial
court=s ruling only if,
after reviewing the entire record, it is clear that the trial court abused its
discretion.  Id.  An abuse of discretion occurs when a
court acts without reference to guiding rules or principles, or acts
arbitrarily or unreasonably.  Id.  

A court may permit a party to withdraw an
admission if a court finds that the party shows good cause for the withdrawal,
that the parties relying on the admission will not be unduly prejudiced, and
that the withdrawal will subserve the presentation of the action=s merits.  Tex.
R. Civ. P. 198.3.  A party can
establish good cause by showing that its failure to answer was accidental or
the result of mistake, rather than intentional or the result of conscious
indifference.  Stelly, 927 S.W.2d
at 622.  Even a slight excuse will
suffice, especially where delay or prejudice will not result against the
opposing party.  Webb v. Ray, 944
S.W.2d 458, 460 (Tex. App.CHouston [14th
Dist.] 1997, no writ).  The actions of
the parties and counsel are significant when a court is reviewing the record to
determine if good cause has been established. 
Id. at 461.

Progressive=s request for
admissions was served on appellants on June 3, 2002; thus, appellants= answers and/or
objections were due by July 6, 2002.[8]  Although appellants= attorney was
aware of the request for admissions, he did not contact Progressive=s attorney for an
extension of time to respond.  On July 9,
Progressive=s attorney informed appellants attorney by
telephone that he had not received appellants= responses to the
request for admissions and other discovery served at the same time.  When no discovery responses were forthcoming,
on July 22, Progressive=s attorney followed up with a letter again
informing appellees of the unanswered discovery.  Then, on July 26, twenty days after the
discovery was due, appellants filed objections and responses to the request for
admissions.  Appellants did not file a
motion to strike the deemed admissions, however, until the beginning of
January, 2003, six months after the request for admissions was served on them.  








Appellants= motion to strike
the deemed admissions was supported by the affidavit of Kheir,[9]
in which he stated in material part:

I am the representative for C &
S Sports and Imports.  It was necessary
for me to fly to Lebanon during the period in which the discovery responses
were due.  In this regard, I had to
assist my mother-in-law, who was sick. 
We flew her, Diana Elmas, to M.D. Anderson (where she underwent and is
still receiving chemotherapy treatment).

As a consequence, I was not able to get to answer the
discovery with my lawyer until now.

Kheir=s affidavit, while
offering an explanation for the failure to timely answer the request for
admissions, also demonstrates that he was aware of the request for admissions
and when they were due.  Additionally,
the record shows that appellants= attorney, who
undeniably was aware of the request for admissions, failed to timely or
conscientiously address this outstanding discovery.

In the motion to strike, appellants= attorney
represents that he attempted to reach an agreement on an extension of the
discovery deadline, but Progressive=s counsel refused.
However, the motion contains no affidavit of appellants= attorney
attesting to any communications or attempts to reach an agreement with
Progressive=s attorney.  Moreover, in response to the motion to
strike, Progressive=s counsel averred in an affidavit that, at
no time before the discovery was due, did appellants= counsel discuss
with him or contact him regarding an extension of time to respond and/or object
to the discovery, nor did appellants= counsel discuss
with him or contact him to explain why no objections or answer were filed.  Finally, Progressive=s counsel stated
that the first time he became informed of the claimed reason why the request
for admissions had not been timely answered was on July 26, 2002, when he was
served with appellants= untimely objections and responses to the
request for admissions. 








The threshold standard for withdrawal of
deemed admissions is good cause, and the burden of proof is on appellants to
establish good cause.  See Webb,
944 S.W.2d at 460.  To prevail,
appellants must prove they did not intentionally or consciously disregard their
obligation to timely answer.  See id.  

Although Kheir=s affidavit raises
a serious situation that could excuse his tardiness, it is so lacking in
details that it is of little value.  For
example, he could have left well after the admissions were served, leaving him
ample time to answer them timely.  Or, he
could have returned from Lebanon well before the answer date.  We do not know from Kheir=s affidavit
precisely when he had to leave for Lebanon or when he returned.  He does not state that he was unaware of the
request for admissions and his need to answer them.  His attorney=s inaction also is
of little value in appellants= attempt to set
aside the deemed admissions.  His total
failure to communicate is certainly more reminiscent of lack of care and
disregard than of accident or mistake, especially since he has provided no
explanation for the tardiness of the admissions other than his client=s temporary
departure from the country.  He does not
explain that he had trouble reaching his client or that his client left before
he could be contacted.  Without some
explanation, we have no reason to overrule the trial court=s decision on the
matter.

Based on this record, we cannot say that
the trial court abused its discretion in denying appellants= motion to strike
the deemed admissions.  See Darr,
20 S.W.3d at 808 (holding that good cause for failure to respond to requests
for admissions was vitiated when party waited three months after receiving
requests for admissions attached to motion for summary judgment to either
answer the requests or move to withdraw the deemed admissions); Webb,
944 S.W.2d at 461 (holding appellants failed to show good cause when they filed
admissions late and did not file a motion to withdraw deemed admissions until
over six months later, and did not appear for hearing on motion or provide
evidence to support alleged good cause).

We overrule appellant=s issue. 








3.       The
Exclusion of Evidence Relating to Attorney=s Fees.

In this issue, appellants contend the
trial court erred in disallowing cross-examination of Progressive=s attorney
concerning his contractual arrangement with Progressive or the amount of
attorney=s fees actually
paid to the attorney, for the purpose of impeaching the attorney=s testimony
concerning the amount and reasonableness of attorney=s fees.  We apply an abuse‑of‑discretion
standard in reviewing whether a trial court erred in admitting or excluding
evidence.  See City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995)..

Appellants argue evidence of the attorney=s contractual
arrangement with Progressive is Acertainly relevant@ on the issue of
the amount of reasonable and necessary attorney=s fees, and,
according to appellants, if the jury had heard that Valdes had no obligation to
pay attorney=s fees to Progressive=s attorney and had
not paid him any money, it is Amore likely@ the jury would
have awarded a different amount, particularly given that Valdes did not appear
in person for trial but was presented by deposition.[10]  Appellants cites as their sole authority Arthur
Andersen & Co. v. Perry Equip. Corp., in which the Texas Supreme Court
lists the factors a fact finder should consider when determining the
reasonableness of a fee.  945 S.W.2d 812,
818 (Tex. 1997).[11]  








However, while Arthur Andersen lists
a number of relevant factors, appellants do not contend that the evidence they
sought to introduce fits within any of the listed factors, and they do not
otherwise explain how Arthur Andersen supports their position.  Here, Progressive=s attorney
testified that he was paid an hourly fee, and he testified to the amount of the
fee and the billable time spent on the file, and further testified that the
amount sought was reasonable and necessary. 
He also submitted into evidence a list of his activities and the time he
expended on them, as well as that of his paralegal from April 19, 2000 to
February 10, 2004.  He further testified
concerning his experience and familiarity with the usual and customary fees
charged in this type of litigation, the complexity of the case, and the number
of parties and witnesses in the case. 

Moreover, the trial court may have
determined that appellants= attempt to get
before the jury evidence that Progressive, not Valdes, was paying the attorney=s fees was an
improper attempt to inject insurance (through Progressive=s role as
subrogee) into the trial.  Generally, it
is error to refer to the fact that the plaintiff is protected by some form of
insurance because it is irrelevant, immaterial, and calculated to work injury.  See Kendrix v. So. Pac. Transp. Co.,
907 S.W.2d 111, 112 (Tex. App.CBeaumont 1995,
writ denied) (citing Myers v. Thomas, 143 Tex. 502, 186 S.W.2d 811, 813
(1945)).  Appellants do not address the
general prohibition against the introduction of insurance coverage or argue
that any exception applies.  Indeed,
appellants= argument appears to support the exclusion
of the evidence.  Appellants contend
that, if the jury knew that the plaintiffs= attorney=s fees were being
paid by Valdes=s insurance company, the jury would award
a lesser amount of attorney=s feesCor none at allCwhich appears
calculated to evoke the very prejudice the general rule attempts to preclude.

On this record, we cannot say the trial
court abused its discretion and we therefore overrule appellants= issue.

4.       The
Denial of Appellants= Motion for
Directed Verdict.

Next, appellants contend the trial court
erred in refusing to grant in full their motion for directed verdict based on
Progressive=s failure to answer appellants= request for disclosure
directed to Valdes and Gonzalez.  On the
facts of this case, however, we disagree.

According to appellants= motion, in
January 2000, appellants served Jose Valdes and Magdalena Gonzalez with
requests for disclosure, requesting that these plaintiffs identify their legal
theories, the facts supporting same, and any applicable insurance or indemnity
agreements together with the amount and method of calculating economic
damages.  This discovery was never
answered.  Appellants contended that,
because this discovery was never answered, they had no knowledge of the legal
theories the case would be tried on. 
They also denied that any theories were tried by consent.  Consequently, appellants asserted below that
they were Aentitled to a directed verdict on all
issues since none of them are supported by answers to discovery.@  On appeal, appellants cite Texas Rule of
Civil Procedure 193.6 as their sole authority, although their issue alleges
that the trial court erred in not applying a Rule 215 sanction against
Progressive.  See Tex. R. Civ. P. 193.6 (a party who
fails to timely make, amend, or supplement a discovery response may not
introduce undisclosed material or information absent a showing of good cause or
lack of unfair surprise or prejudice to other parties).  We find a multitude of problems with
appellants= issue.








First, the discovery was served on Valdes
and Gonzalez, not Progressive.  Second,
the discovery was served after appellants= own counsel had
requested and obtained a stay of all litigation because another party had filed
a suggestion of bankruptcy.[12]  Third, by the time the stay was lifted,
Valdes and his wife were no longer plaintiffs, having non-suited their claims
months earlier.  Yet, appellants never
attempted to re-serve the discovery on Progressive or to compel Progressive to
answer it; indeed, appellants apparently never sought any discovery from
Progressive.  Thus, Progressive did not
fail to comply with an obligation to answer any discovery properly propounded
to it.  Fourth, Appellants have waived
this complaint because Athe failure to obtain a pretrial ruling on
discovery disputes that exist before commencement of trial constitutes a waiver
of any claim for sanctions based on that conduct.@  See Remington Arms Co. v. Caldwell,
850 S.W.2d 167, 170 (Tex. 1993).  Fifth,
even if they did not obtain a pretrial ruling on the failure to answer discovery,
they might have been able to preserve some complaint had they objected to the
admission of the evidence at trial by relying on Rule 193.6.  They did not do this.  A motion for directed verdictCfiled after all
the evidence was introducedCwas the wrong
vehicle to raise the complaint and was too late to accomplish what they
desired.

We overrule appellants= issue.

5.       The
Judgment Against Cayanne Elmas.

In this portion of their brief, appellants
contend that the trial court erred in rendering judgment against Cayanne Elmas
for actual and punitive damages, because it did not grant partial summary
judgment against her and the jury found that she did not act with malice or
fraud and it did not assess exemplary damages against her.  Additionally, appellants complain that the
trial court should not have authorized the writ of execution to issue against
her.[13]  However, Cayanne Elmas did not appeal from
the judgment; therefore, we do not address any issues relating to the judgment
against her.

6.       The
Legal and Factual Sufficiency of the Evidence Supporting Award of Exemplary
Damages. 

Appellants argue that the evidence is
legally and factually insufficient to support the exemplary damages based on
fraud and the additional damages for knowing and/or intentional DTPA violations
against them and Cayanne Elmas.  The jury
found that appellants knowingly and intentionally engaged in one or more of the
listed DTPA violations, and awarded additional damages of $10,000 against each
appellant based on findings that appellants= conduct was
knowing and/or intentional.  The jury
also found, by clear and convincing evidence, that Kheir acted with malice or
fraud, and that C & S Sports and Imports and Remington International acted
with malice.  Based on these answers, the
jury awarded exemplary damages of $25,000 against each appellant.  

As explained in the previous section,
Cayanne Elmas did not appeal from the judgment; therefore, we do not address
the sufficiency of the evidence supporting the judgment against her.  Additionally, a complaint of factual insufficiency
of the evidence to support a jury finding or of the excessiveness of the
damages found by the jury must have been raised in a motion for new trial.  See Tex.
R. Civ. P. 324(b)(2), (4). 
Appellants= motion for new trial did not raise the
issue complained of on appeal. 
Therefore, appellants have failed to preserve the factual sufficiency
issue and we do not address it.  We will
determine whether the evidence is legally sufficient to support the jury=s punitive damages
awards against appellants.

a.       Standards
of Review








In their brief, appellants assert that this court should
apply the traditional Ano evidence@ test to determine the legal sufficiency of the punitive
damages awards.  This standard of review
is appropriate to apply to the award of additional damages for knowing and/or
intentional violations of the DTPA; however, the jury was charged to find
malice and/or fraud based on Aclear and convincing evidence@ and it awarded exemplary damages
based on those findings.  Because a
heightened evidentiary burden was required at trial, we will assume for
purposes of this case that we should apply a heightened standard of review on
appeal to the fraud and/or malice findings. 
See Southwestern Bell Tel. Co. v. Garza, 164 S.W.3d 607, 622B23 (Tex. 2004) (holding that, Aas a matter of logic,@ a finding that must meet an elevated
standard of proof must also meet an elevated standard of review).

In reviewing the legal sufficiency of evidence to support a
finding that had to be proved by clear and convincing evidence, we must Alook at all the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.@ 
See Garza, 164 S.W.3d at 627; see also In re J.F.C., 96
S.W.3d 256, 265B66 (Tex. 2002) (detailing procedure to follow in assessing
evidence).  If, after conducting the review,
we determine that no reasonable fact finder could form a firm belief or
conviction that the matter that must be proven is true, then we must conclude
that the evidence is legally insufficient. 
See Diamond Shamrock Ref. Co., L.P. v. Hall, 168 S.W.3d 164, 170
(Tex. 2005).

In determining whether legally sufficient
evidence supports the award of additional damages for knowing and/or
intentional DTPA violations, we apply the Atraditional@ standard of
review.  Accordingly, we must credit
evidence favorable to the finding if a reasonable fact finder could consider
it, and we must disregard evidence contrary to the finding unless a reasonable
fact finder could not disregard it.  See
City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  A legal sufficiency point may only be
sustained when the record discloses: (1) a complete absence of evidence of a
vital fact; (2) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; and (4) the
evidence established conclusively the opposite of the vital fact.  Merrell Dow Pharm., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).  The
final test for legal sufficiency is whether the evidence at trial would enable
reasonable and fair‑minded people to reach the verdict under review.  City of Keller, 168 S.W.3d at 827.








b.       Analysis
of Evidence

Keeping in mind the above standards of
review, we turn to the substance of appellants= legal sufficiency
challenge.  Appellants contend the
evidence is insufficient because privity of contract is required to sustain
purely economic losses for breach of an express warranty, and neither Valdes
nor Gonzalez ever spoke to appellants before the sale or repossession of the
Mercedes.  Appellants make these
complaints generally, and do not attempt to address the jury findings
individually.  We will therefore address
appellants= complaints in the same manner.

Concerning the privity of contract issue,
appellants do not present any analysis of the issue or explain how it relates
to the jury issues; they merely assert that some courts have held privity is
required to sustain purely economic losses for breach of an express warranty,
while other courts have more recently held privity of contract is not required,
and the Texas Supreme court has not directly addressed the issue.  As an initial matter, the final judgment does
not include any jury finding that an express warranty was breached, and
appellants do not explain how this argument applies to the DTPA, fraud, or
malice findings the jury did make. 
Therefore, we overrule appellants= argument to the
extent it asserts that privity of contract was required to sustain exemplary
damages based on purely economic damages for breach of an express warranty. 








We next turn to the second part of
appellants= complaintCthat the evidence
was legally insufficient to sustain the awards of additional damages for
knowing and/or intentional conduct and exemplary damages for fraud and/or
malice because none of the appellants ever spoke to Valdes or Gonzalez before
the sale or the repossession of the Mercedes. 
In connection with this argument, appellants contend there is
unchallenged evidence that Steffan never paid Kheir for the car, and this
evidence is relevant to Kheir=s knowledge when
he repossessed the car.  The argument is
minimally briefed and appellants cite no authorities in support of it.  Therefore, we hold that appellants have
waived this issue.  See Tex. R. App. P.  38.1(h); Sunnyside Feedyard, L.C. v.
Metropolitan Life Ins. Co., 106 S.W.3d 169, 173 (Tex. App.CAmarillo 2003, no
pet.) (AFailure to either
cite authority or advance substantive analysis waives the issue on appeal.@).   

We therefore overrule appellants= challenge to the
legal sufficiency of the evidence supporting the jury=s award of
additional damages for knowing/intentional violations of the DTPA and exemplary
damages.

7.       Stacking
the Punitive Damages Awards.

Appellants further contend that the trial
court erred in stacking the punitive damages awards.  Specifically, appellants contend Progressive
is not entitled to separate punitive damages awards for the DTPA violations and
common law fraud, because a single injury resulted from Athe
repossession/conversion of the vehicle.@  See Birchfield v. Texarkana Mem=l Hosp., 747 S.W.2d 361,
367 (Tex. 1987) (AIn the absence of separate and distinct
findings of actual damages on both the acts of negligence and the deceptive
acts or practices, an award of exemplary damages and statutory treble
damages would be necessarily predicated upon the same findings of actual
damages and would amount to a double recovery of punitive damages.@).  Additionally, appellants also appear to
complain on the same basis that Progressive was entitled to obtain a judgment
for actual damages of $10,000 against each of the four defendants, jointly and
severally.  

In response, Progressive complains that
appellants have failed to preserve the issue for review.  We agree. 
In order to preserve a complaint for appellate review, a party is
generally required to make a timely, specific objection and obtain a ruling
from the trial court.  See Tex. R. App. P. 33.1(a).  Failure to make such an objection waives the
point on appeal.  See Holland v.
Hayden, 901 S.W.2d 763, 765 (Tex. App.CHouston [14th
Dist.] 1995, writ denied) (challenge to sufficiency of evidence to support attorneys
fees in motion for new trial did not preserve claim of double recovery of
attorneys fees).  Appellants did not
raise the complaints they make on appeal to the trial court in their motion for
new trial, and the record does not show that they otherwise made the trial
court aware of their complaint. 
Therefore, they have failed to preserve these issues for review. 








We overrule appellants= issue.

8.       Error
in Award of Pre- and Post-Judgment Interest at a Rate of Ten Percent.

Finally, appellants contend that the trial
court erred in awarding pre- and post-judgment interest at a rate of ten
percent.  Appellants assert that,
pursuant to Texas Finance Code section 304.003(c), the correct rate should have
been five percent.  See Tex. Fin. Code ' 304.003(c); see
also id. ' 304.103 (pre-judgment interest rate is
equal to post-judgment interest rate applicable at time of judgment).  Progressive agrees that the rate should be
five percent rather than ten percent. 
Therefore, we sustain this issue and remand the case to the trial
court to calculate pre-judgment and post-judgment interest, as necessary,
consistent with this opinion.  

Conclusion

We reverse in part and remand this case to
the trial court to calculate pre-judgment and post-judgment interest, as
necessary, consistent with this opinion. 
In all other respects, we affirm the trial court=s judgment.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Memorandum Opinion filed June 13, 2006.

Panel
consists of Justices Hudson, Fowler, and Seymore.











[1]  The record is
unclear as to the date or specific time frame in which the transaction
occurred.





[2]  The check was
signed by Valdes=s wife, Magdalena Gonzalez, and paid from their joint
account.





[3]  Kheir
testified at trial that he had authority to act on behalf of both C & S
Sports and Imports and Remington International. 
By deposition, Cayanne Elmas also testified that Kheir had full
authority to act on behalf of C & S Sports and Imports and Remington
International.





[4]  The jury also
found that, for both C & S Sports and Imports and Remington International,
Kheir was acting in the furtherance of a mission for their benefit and subject
to their control as to the details of the mission.  However, the jury did not find that any of the
defendants engaged in a conspiracy, and it did not find that Cayanne Elmas
committed fraud.  The jury did not award
exemplary damages against Cayanne Elmas.





[5]  In their
summary of the argument section of their appellate brief, appellants also
assert that the trial court erred in denying their motion for judgment
notwithstanding the verdict because there was no evidence of Progressive=s consumer status, and the punitive damages claims
were not assignable.  However, these
issues were not raised or argued with applicable authority in the body of
appellants= brief, and so are waived.  See Tex.
R. App. P. 38.1(h); see also Sunnyside Feedyard, L. C. v.
Metropolitan Life Ins. Co., 106 S.W.3d 169, 173 (Tex. App.CAmarillo 2003, no pet.) (AFailure to either cite authority or advance
substantive analysis waives the issue on appeal.@).





[6]  Although
appellants seem to argue that the claims of Valdes and Gonzalez had not been
dismissed, they were dismissed long before trial.  





[7]  Appellants= own actions show they were not confused about the
finality of the March 23 final judgment. 
They timely filed their motion for new trial, motion for JNOV, and
notice of appeal.





[8]  Progressive=s request for admissions were mailed to appellants= attorney=s prior
address, but appellants= attorney signed a Rule 11 agreement waiving any
objection based upon defective service and agreed that those requests were
deemed served on June 3, 2002.  





[9]  Kheir=s affidavit, dated July 25, 2002,
was previously attached to appellants= objections and responses to the
request for admissions.





[10]  Appellants do not otherwise
question the attorney=s fee award. 





[11]   The factors
the Arthur Andersen court listed were the following:

(1) the time and labor required, the novelty and
difficulty of the questions involved, and the skill required to perform the
legal service properly;

(2) the likelihood . . . that the acceptance of the
particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for
similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by
the circumstances;

(6) the nature and length of the professional
relationship with the client;

(7) the experience, reputation, and ability of the
lawyer or lawyers performing the services; 
and

(8) whether the fee is fixed or contingent on results
obtained or uncertainty of collection before the legal services have been
rendered.

Arthur Andersen,
945 S.W.2d at 818 (citing Tex.
Disciplinary R. Prof. Conduct 1.04, reprinted in Tex.
Gov=t Code, tit. 2, subtit. G app. (State Bar Rules, art. X, ' 9)).





[12]  Appellants= counsel asserts that the attorney who represented
Valdes and Gonzalez represented that the discovery would be answered after the
stay was lifted; however, the only evidence in the record concerning the
discovery is a letter from Valdes=s
lawyer, in which he informed appellants= counsel
that he would not respond to the requests for disclosure Aat this time@ due to
the bankruptcy stay, and requesting that, if appellants= counsel disagreed with this position, to respond in
writing with citations to supporting authority. 
No response appears in the record, nor is there any indication in the
record appellants= counsel sought to compel answers to any discovery.





[13]  Appellants
also make several other conclusory complaints about the writ of execution in
this section of its brief without citation to any authority or meaningful
argument.  We therefore do not address
these complaints.  See Tex. R. App. P. 38.1(h).